UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| OSMAN GARBA, | : | CIVIL ACTION NO. 10-4445 (MLC) |
|  | : |  |
| Petitioner, | : | **MEMORANDUM OPINION** |
|  | : |  |
| v. | : |  |
|  | : |  |
| UNITED STATES OF AMERICA, | : |  |
|  | : |  |
| Respondent. | : |  |

**COOPER, District Judge**

This matter comes before this Court on the pro se motion of Osman Garba ("petitioner") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The underlying criminal case in this Court was United States v. Garba, Criminal No. 99-704-03 (MLC).

Petitioner, a native and citizen of Ghana, was indicted for involvement in an international conspiracy to distribute cocaine, and other alleged offenses. On March 11, 2002, pursuant to a written plea agreement, he pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute more than 5 kilograms of cocaine, contrary to 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846. Following further proceedings described below, he appealed from his conviction and sentence. That appeal was pending when United States v. Booker, 543 U.S. 220 (2005) was decided. On April 13, 2005, the Court of Appeals affirmed as to petitioner's guilty plea and conviction, but remanded for resentencing in accordance with Booker. This Court imposed a sentence of

280 months imprisonment at the resentencing hearing on November 28, 2007.  That

sentence was affirmed on direct appeal on January 22, 2009, and the Supreme Court

denied certiorari.  Petitioner then filed this timely motion under Section 2255.[1]

Petitioner claims that he received ineffective assistance of counsel with regard to

his decision to plead guilty rather than go to trial, as follows:  (1) he was not informed

that the drug type, namely cocaine, was an element of the offense, and that he had a right

to a jury determination of that beyond a reasonable doubt; (2) he was not informed that

the guilty plea carried a risk of deportation, see Padilla v. Kentucky, 130 S.Ct. 1473,

---

[1]  The relevant records filed herein are the following numbered docket entries ("dkt."):
Original § 2255 motion filed 8-31-10 (dkt. 1), with supporting brief, affidavit and exhibits (dkt.
1-2); Miller notice (dkt. 4); petitioner's response to Miller notice, with supplemental supporting
brief and exhibit (dkt. 5); government's opposition brief and exhibits (dkt. 11); and petitioner's
reply brief (dkt. 12).  The records filed in the underlying criminal case, Criminal No. 99-704-03
("crim. dkt.") include the Superseding Indictment (crim. dkt. 17); 1-24-01 order appointing CJA
counsel David L. Rhoads (crim. dkt. 40); defense motion to dismiss indictment on Speedy Trial
Act grounds filed 2-28-02 ("Speedy Trial Act motion") (crim. dkt. 67); 3-11-02 order denying
Speedy Trial Act motion, per oral ruling on 3-5-02 (crim. dkt. 70); transcript of 3-11-02 guilty
plea hearing (crim. dkt. 71); written plea agreement (crim. dkt. 74); transcript of proceedings on
original sentencing date of 6-26-02 (crim. dkt. 76); 8-23-02 order appointing substitute CJA
counsel John J. Barry (crim. dkt. 77); defense motion to withdraw guilty plea filed 11-4-02 ("plea
withdrawal motion") (crim. dkt. 88); transcripts of evidentiary hearing on plea withdrawal motion
conducted on 12-19-02 (crim. dkt. 111), and 5-7-03 (crim. dkt. 112); 9-26-03 memorandum
opinion and order denying plea withdrawal motion (crim. dkt. 96, 97); original judgment of
conviction filed on 11-18-03 (crim. dkt. 103); Court of Appeals mandate and opinion on appeal
from original judgment of conviction (crim. dkt. 120); 6-29-06 order appointing substitute CJA
counsel Anthony G. Simonetti (crim. dkt. 128); transcript of 11-28-07 resentencing hearing
(crim. dkt. 161); amended judgment of conviction filed 12-21-07 (crim. dkt. 159); and Court of
Appeals mandate and opinion on appeal from amended judgment of conviction (crim. dkt. 162).
The Chambers file in the underlying criminal case also includes the original Presentence
Investigation Report ("PSR") dated 4-19-02; a Supplemental Presentence Investigation Report
dated 6-18-07; and various sentencing materials submitted by the parties.

1478-80 (2010); (3) he was not informed that he could have entered an "open plea" rather than enter into a written plea agreement; (4) his counsel did not seek to preserve in writing for appeal his Speedy Trial Act issue, which he had raised in pretrial motion practice and this Court had denied; and (5) his counsel permitted him to plead guilty to a conspiracy charge, whereas the government's evidence and his guilty plea allocution would have supported only an exportation offense that was not charged. (Dkt. 1 at 5-9; dkt. 5 at 1-6.)

Based upon our review of the motion papers and the relevant materials contained in the record of the underlying criminal case, this Court finds that an evidentiary hearing is not required, and that each of petitioner's claims should be adjudicated upon the papers. See Rules Governing Section 2255 Proceedings for U.S. District Courts, Rule 8(a); United States v. McCoy, 410 F.3d 124, 131-35 (3d Cir. 2005). We conclude that based upon the extensive record on this motion and in the underlying criminal case, the Section 2255 motion must be denied.

## I.    PROCEDURAL HISTORY

Petitioner and three other defendants were indicted in a superseding indictment filed on August 14, 2000.[2]  The charges against petitioner were set forth in counts one,

---

[2]  The original Indictment, filed on November 29, 1999, named only one defendant, Albert Kittoe — not petitioner — and contained one conspiracy count and one substantive count concerning alleged exportation of more than 500 grams of cocaine to Germany. (Crim. dkt. 1; crim. dkt. 10.)  The Superseding Indictment, filed in August, 2000, named defendant Kittoe and others including petitioner, and contained the additional and expanded counts described here. (Crim. dkt. 17.)

two, and four through nine.  (Crim. dkt. 17.)  He eventually pleaded guilty to count one, which charged that from approximately December, 1994 though December, 1998, in Essex County, New Jersey and elsewhere, he engaged in a conspiracy with three named co-defendants and others, to distribute and possess with intent to distribute more than five kilograms of cocaine, contrary to 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846. (Id. at 1-3; crim. dkt. 71 at 24-31.)

     The alleged primary goal of that count one conspiracy was to smuggle quantities of cocaine into Germany, England, Switzerland and elsewhere, for distribution in those countries and elsewhere.  The alleged methods and means were to purchase kilogram quantities of cocaine from drug suppliers; to recruit couriers to transport the cocaine from the United States to those foreign locations; to use various methods to conceal cocaine in the luggage of the couriers; and to have couriers transport the proceeds of the sales in Europe back into the United States for members of the organization.  (Crim. dkt. 17 at 1-3.)  The second count alleged petitioner's involvement in a separate conspiracy to import more than one kilogram of heroin into the United States from foreign countries including Ghana, in violation of 21 U.S.C. § 963.  (Id. at 4-5.)  Counts four through nine were substantive counts against him and other defendants, describing courier trips exporting specified quantities of cocaine from the United States to European cities, fitting within the time frame of the count one conspiracy, allegedly in violation of 21 U.S.C. § 963 and 18 U.S.C. § 2.  (Id. at 6-8.)

An arrest warrant was issued as to petitioner on the date of his indictment in

August, 2000.  The warrant was executed in Ghana approximately one month later on

September 26, 2000.  Petitioner was extradited and returned to the United States in the

custody of the arresting agents.  (Crim. dkt. 31, 39, 107 at 3-4.)  He was arraigned in this

Court on January 25, 2001, entering a not-guilty plea through his CJA-appointed counsel,

David L. Rhoads, Esq.  (Crim. dkt. 38, 42.)  Discovery, motion practice, and plea

negotiations pertaining to petitioner and his co-defendants ensued.  An initial complex

case order and several later specific continuance orders were entered in the action.  (Crim.

dkt. 20, 43, 51, 57.)

The ongoing plea negotiations had resulted in guilty pleas by each of petitioner's

three co-defendants as of the end of that calendar year, 2001.  (Crim. dkt. 52, 59 and 62.)

At a status conference with petitioner and his counsel on January 10, 2002, this Court

scheduled jury selection to begin on March 5, 2002, with the trial to commence on

Monday, March 11, 2002.  (Crim. dkt. 65, 108.)  On February 28, 2002, petitioner's

counsel filed a motion to dismiss the charges, alleging violation of his rights under the

Speedy Trial Act and the due process clause of the Fifth Amendment ("Speedy Trial Act

motion").  (Crim. dkt. 67.)  That motion was argued by the parties and denied by this

Court on March 5, 2002, prior to jury selection that day.  (Transcript, crim. dkt. 109 at 11-

21; Order, crim. dkt. 70.)  On the following Monday, March 11, 2002, just before the jury

trial commenced as scheduled, petitioner pleaded guilty to count one of the Superseding

5

Indictment, pursuant to a written plea agreement signed on that same date.  (Transcript, crim. dkt. 71; plea agreement, crim. dkt. 74 at 5.)[3]  Upon completion of the plea hearing, this Court directed preparation of a Presentence Investigation Report, and scheduled petitioner's sentencing for June 26, 2002.  (Crim. dkt. at 72.)

Petitioner appeared with his assigned counsel, Mr. Rhoads, for the sentencing hearing on June 26, 2002.  (Minutes, crim. dkt. 75; transcript, crim. dkt. 76.)  At that time, petitioner requested appointment of new counsel, and announced that he intended to file a motion to withdraw his guilty plea.  (Id.)  The Court adjourned the sentencing in light of those developments.  On August 20, 2002, petitioner reiterated on the record his request for new counsel and his intent to seek withdrawal of his guilty plea, and the Court appointed substitute counsel John J. Barry, Esq.  (Minutes, crim. dkt. 81; transcript, crim. dkt. 110.)

Mr. Barry filed petitioner's withdrawal motion on November 4, 2002, and the matter proceeded to evidentiary hearings on December 19, 2002, May 7, 2003, and May 27, 2003, with supplemental briefing thereafter.  (Motion, crim. dkt. 88; transcripts, crim. dkt. 111, 112 and 114.)  The withdrawal motion was denied by this Court by Memorandum Opinion filed September 26, 2003.  See United States v. Garba, 285

---

[3]  The written plea agreement stated, and petitioner acknowledged at his plea hearing, that in exchange for petitioner's guilty plea to count one of the Superseding Indictment pending against him here, the government would move at his sentencing hearing to dismiss the remaining counts pending against him in this case, as well as to dismiss another pending indictment in this district that charged him with conspiracy to distribute and possess with intent to distribute more than 100 grams of heroin.  (Crim. dkt. 71 at 6-8; crim. dkt. 74 at 1.)

F.Supp.2d 504 (D.N.J. 2003).  The sentencing hearing, concluded on October 31, 2003, resulted in a sentence of 320 months imprisonment, 5 years of supervised release, and a fine of $1,000.  (Minutes, crim. dkt. 102; Judgment, crim. dkt. 103.)[4]  Petitioner appealed. (Crim. dkt. 105.)

The Court of Appeals affirmed petitioner's conviction, including this Court's denial of his motion to withdraw his guilty plea, in an opinion filed April 13, 2005. United States v. Garba, 128 Fed.Appx. 855 (3d Cir. 2005).  That same decision remanded for resentencing only, in light of Booker.  Id. at 857.  The Supreme Court denied certiorari in October, 2005, and the matter returned to the District Court for the resentencing.  Garba v. United States, 546 U.S. 912 (2005).

The sentencing hearing on remand was conducted on November 28, 2007, resulting in a lower sentence of 280 months imprisonment, with all other features unchanged.  (Minutes, crim. dkt. 158; transcript, crim. dkt. 161; Amended Judgment, crim. dkt. 159.)[5]  The Court of Appeals affirmed petitioner's conviction and his post-

--------

[4] This was petitioner's first sentencing hearing, prior to the Booker remand for resentencing.  That first sentencing proceeding included lengthy evidentiary hearings.  (See transcripts, crim. dkt. 115, 116, 117.)  The Court imposed a lower sentence of 280 months imprisonment at the resentencing.  However, the Court found the same Guidelines score at both sentencing hearings, namely a total offense level of 38 and Criminal History Category II, resulting in a Guideline range of 262 to 327 months.  (Compare transcript, crim. dkt. 117 at 60-63, with transcript, crim. dkt. 161 at 26-27.)  The basis for that Guideline calculation, and the ultimate sentence, is summarized infra, nn.12-15, with accompanying text.

[5] CJA counsel John J. Barry, Esq. was relieved from further representing petitioner in this Court in November, 2003, while the appeal on his conviction and original sentencing was pending.  (Crim. dkt., p. 2.)  A third CJA counsel, Anthony G. Simonetti, Esq., was appointed to represent him on remand in the resentencing.  (Crim. dkt. 128.)  Petitioner's claims of ineffective

<u>Booker</u> sentence in an opinion filed January 22, 2009.  <u>United States v. Garba</u>, 307

Fed.Appx. 698 (3d Cir. 2009).  The Supreme Court denied certiorari on January 19, 2010.

<u>Garba v. United States</u>, 130 S.Ct. 1159 (2010).

     This <u>pro se</u> Section 2255 motion was timely filed in this Court on August 31, 2010.

(Dkt. 1.)  <u>See</u> 28 U.S.C. § 2255(f)(1).  The motion was accompanied by petitioner's

supporting brief, an affidavit by him, and several exhibits.  (Dkt. 1-2.)  Petitioner

responded to the <u>Miller</u> notice with a reply brief combined with "motion for leave to

supplement" (dkt. 5), stating one additional argument, which we will treat as a

supplemental claim.  The government filed its memorandum of law in opposition to the

Section 2255 motion, with attached exhibits, and petitioner filed a reply brief.  (Dkt. 11,

12.)

**II.      DISCUSSION**

**A.      Legal Framework**

     Under 28 U.S.C. § 2255:

> A prisoner in custody under sentence of a [federal] court . . . claiming
> the right to be released upon the ground that the sentence was imposed
> in violation of the Constitution or laws of the United States, or that the
> court was without jurisdiction to impose such sentence, or that the

---

assistance of counsel in his pending Section 2255 case pertain only to the guilty plea phase of his
underlying criminal case, when he was represented by CJA counsel David L. Rhoads, and thus
assert no contentions against Mr. Barry or Mr. Simonetti.  (See dkt. 1 at 5-9; dkt. 5 at 1-6.)
Petitioner did file numerous <u>pro se</u> motions in this Court during the remand phase, but those also
are beyond the scope of this opinion.  (See, e.g., crim. dkt. 123, 124, 125, 127, 129, 134, 136,
137, 152, 154, 155, 156, 157 and 160.)  The Court takes judicial notice that David L. Rhoads,
Esq. is now deceased, having passed away on January 18, 2008.

> sentence was in excess of the maximum authorized by law, or is
> otherwise subject to collateral attack, may move the court which
> imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

This Court has jurisdiction under 28 U.S.C. § 1331.  Petitioner has the burden of

establishing any claim asserted in the motion.  United States v. Abbott, 975 F.Supp. 703,

705 (E.D. Pa. 1997).

Section 2255 itself limits the discretion of a district court to deny a motion made

thereunder without a hearing:

> Unless the motion and the files and records of the case conclusively show
> that the prisoner is entitled to no relief, the court shall cause notice thereof
> to be served upon the United States attorney, grant a prompt hearing
> thereon, determine the issues and make findings of fact and conclusions of
> law with respect thereto.

28 U.S.C. § 2255(b) (emphasis added).

The duty of the district court under this provision has been described generally as

follows:

> When a motion is made under 28 U.S.C. § 2255 the question of whether to
> order a hearing is committed to the sound discretion of the district court.  In
> exercising that discretion the court must accept the truth of the movant's
> factual allegations unless they are clearly frivolous on the basis of the
> existing record.  Further, the court must order an evidentiary hearing to
> determine the facts unless the motion and files and records of the case show
> conclusively that the movant is not entitled to relief.

Gov't of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989) (citation omitted); see

also Rules Governing Section 2255 Proceedings for U.S. District Courts, Rule 8(a).  In

deciding whether to conduct an evidentiary hearing, the court must accept the truth of the

page

petitioner's non-frivolous factual allegations and examine them to see if those claims conclusively satisfy both prongs of the <u>Strickland</u> test, discussed <u>infra</u>.  The court, of course, can reject clearly frivolous claims, <u>Forte</u>, 865 F.2d at 62, and can dispose of vague or unelaborated assertions as insufficient.  <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977); <u>United States v. Dawson</u>, 857 F.2d 923, 928 (3d Cir. 1988).

Petitioner asserts each of his claims under the theory of ineffective assistance of counsel in connection with his guilty plea.  <u>See</u> n.5 <u>supra</u>.  He seeks to set aside his conviction and sentence based upon alleged ineffective assistance of trial counsel in five enumerated aspects relating to his pretrial plea negotiation process.  His claims are quoted verbatim here:[6]

GROUND ONE:  Violation of my Sixth Amendment's right to Notice, effective assistance of counsel and the Due Process Clause.

Counsel was ineffective by not informing me that drug type was an element of the offense and that I had the right to a jury determination of that beyond a reasonable doubt, where I had not waived that right.  I was prejudiced because I received an illegal sentence.

GROUND TWO:  Violation of my Sixth Amendment right to effective assistance of counsel and Due Process.

Counsel rendered ineffective assistance of counsel by not informing me that the guilty plea carried a deportation risk, thereby making the guilty plea involuntary and unintelligent.  I was prejudiced because I would have gone

---

[6]  The quoted text of petitioner's first four claims is taken verbatim from his Section 2255 motion, paragraph 12 (State every ground you claim...).  (Dkt. 1.)  The text of his fifth claim is taken from his reply to the <u>Miller</u> notice, entitled "Petitioner's Reply to the Miller Notice Combined with Motion for Leave to Supplement the 2255 Motion pursuant to FRCP Rule 15." (Dkt. 5.)

to trial or negotiated a plea agreement to include a deportation waiver if I had been so advised.

GROUND THREE:  Violation of my Sixth Amendment right to effective assistance of counsel.

Counsel rendered ineffective assistance of counsel by not informing me that I could enter an "open" guilty plea to resolve this case.  I was prejudiced because I could have received a lower sentence.

GROUND FOUR:  Violation of my Sixth Amendment right to effective assistance of counsel.

Counsel rendered ineffective assistance of counsel when he did not or [sic] seek to preserve in writing, pursuant to Fed.Crm.Proc.Rule 11(a)(2), my speedy trial claim when I had expressed to him my intention to appeal the issue.  I was prejudiced because I would have proceeded to trial if I had known the issue was not preserved.

(Dkt. 1 at 5-9.)

SUPPLEMENTAL CLAIM [Ground Five]:

Petitioner ... moves ... to vacate his conviction for conspiracy under 21 USC § 846, to violate 21 USC § 841(a)(1), because the Government failed to establish that there was an underlying agreement between Petitioner and others to work together to achieve a common goal, thus the plea was unknowing and involuntary and Counsel was ineffective for advising Petitioner to plead guilty when Petitioner had contended there was no conspiracy and had insisted on going to trial, but for Counsel's erroneous advice.

(Dkt. 5 at 1.)

We will discuss each claim in the sections that follow.  Here we summarize the

general legal standards that apply to such claims.

The Sixth Amendment provides in pertinent part: "In all criminal prosecutions, the

accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S.

11

Const. amend. VI.  "A defendant has a Sixth Amendment right not just to counsel, but to 'reasonably effective assistance' of counsel."  United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).  The Supreme Court in Strickland has set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland, 466 U.S. at 687.  As with any other claim under 28 U.S.C. § 2255, the burden of proving ineffective assistance of counsel is on the petitioner.  Gov't of Virgin Islands v. Nicholas, 759 F.2d 1073, 1081 (3d Cir. 1985).

The standard under the first prong of the Strickland test is that the appropriate measure of attorney performance is "reasonableness under prevailing professional norms."  Strickland, 466 U.S. at 688.  A petitioner asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Id. at 690.  Courts must recognize the strong presumption that counsel has rendered adequate assistance and that all significant decisions were made in the exercise of reasonable professional judgment.

Id. at 689; see also Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir. 1999); Reese v.

Fulcomer, 946 F.2d 247, 256-57 (3d Cir. 1991); United States v. Gray, 878 F.2d 702, 710

(3d Cir. 1989).  The evaluation of the objective reasonableness of counsel's performance

must be made "from counsel's perspective at the time of the alleged error and in light of

all the circumstances, and the standard of review is highly deferential."  Kimmelman v.

Morrison, 477 U.S. 365, 381 (1986).

The second prong of the Strickland test requires the petitioner to show that

counsel's deficient performance prejudiced the defense.  Thus, "[a]n error by counsel,

even if professionally unreasonable, does not warrant setting aside the judgment of a

criminal proceeding if the error had no effect on the judgment."  Strickland, 466 U.S. at

691.  The petitioner must show that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different."

Id. at 694.  Furthermore, "[i]t is not enough for the defendant to show that the errors had

some conceivable effect on the outcome of the proceeding" because "[v]irtually every act

or omission of counsel would meet that test."  Id. at 693.

The Strickland Court further held that both prongs must be established in order to

meet the petitioner's burden, and that if either prong is not satisfied the claim must be

rejected, stating:

> Although we have discussed the performance component of an
> ineffectiveness claim prior to the prejudice component, there is no
> reason for a court deciding an ineffective assistance claim to approach
> the inquiry in the same order or even to address both components of

the inquiry if the defendant makes an insufficient showing on one. . . .
If it is easier to dispose of an ineffectiveness claim on the ground of
lack of sufficient prejudice, which we expect will often be so, that
course should be followed.  Courts should strive to ensure that
ineffectiveness claims not become so burdensome to defense counsel
that the entire criminal justice system suffers as a result.

Id. at 697.

We read each of petitioner's claims as challenging the effectiveness of his trial

counsel in connection with petitioner's decision to enter a guilty plea rather than

proceeding to trial.  The established test for determining the validity of a guilty plea is

"whether the plea represents a voluntary and intelligent choice among the alternative

courses of action open to the defendant."  North Carolina v. Alford, 400 U.S. 25, 31

(1970).  Where a defendant is represented by counsel and enters a guilty plea upon the

advice of counsel, the voluntariness of the plea depends on whether counsel's advice

"'was within the range of competence demanded of attorneys in criminal cases.'"  Hill v.

Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771

(1970)).

Hill v. Lockhart holds that a claim of ineffective assistance of counsel in the

context of a guilty plea is subject to the same standard of attorney competence set forth in

the first prong of the Strickland test.  474 U.S. at 58-59.  However, the Hill Court

specifically held that where the collateral challenge is to a plea of guilty rather than a trial

verdict, the "prejudice" prong requires the petitioner to "show that there is a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and would

14

have insisted on going to trial." Id.; see Parry v. Rosemeyer, 64 F.3d 110, 118 (3d Cir. 1995) (citing Hill). In setting forth that standard, the Court in Hill emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58 (citing United States v. Timmreck, 441 U.S. 780, 784 (1979)). Cf. Missouri v. Frye, 132 S.Ct. 1399, 1408 (2012) (holding that as a general rule, defense counsel has the duty to communicate to the client any formal plea bargain offers from the prosecution; stating in dicta that "[t]he alternative courses and tactics in negotiation are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the [plea bargain] process.").

**B.     Petitioner's Claims**

All of petitioner's present claims of ineffective assistance of counsel pertain to the period leading up to entry of his guilty plea on March 11, 2002, a period when he was represented by court-appointed CJA trial counsel David L. Rhoads, Esq. ("counsel") who is now deceased. See n.5 supra. There is, however, an extensive evidentiary case record developed in the course of (1) his guilty plea hearing; (2) litigation of his motion to withdraw the guilty plea; and (3) the two complete sentencing proceedings occasioned by Booker.

Here we address petitioner's claims in light of the constitutional and statutory authorities set forth above. This discussion will draw upon specific portions of the record and additional case law as applicable.

15

1. **Claim One:  Failure to inform petitioner that he had a right to jury determination of drug type (cocaine) beyond a reasonable doubt**

Petitioner makes the following factual allegations on his first claim:

Counsel was ineffective when he failed to correctly advise Petitioner of the nature of the charge to which he had pleaded guilty.  Petitioner's plea was entered without being advised by Counsel or the Court that he had the right to a jury determination of the drug type beyond a reasonable doubt, where he had not waived that right.

Counsel informed Petitioner that the drug type had no bearing on the substance of his charge under 21 U.S.C. § 841 and that the nature of the controlled substance neither constitutes an element nor broadens the basis for conviction.

(Dkt. 1-2 at 1.)[7]

Petitioner argues that "[t]his was contrary to the teachings of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), where the Supreme Court had recognized a new constitutional right grounded in the Due Process Clause and the Sixth Amendment's Notice guarantee."  (<u>Id.</u>)  He quotes <u>United States v. Barbosa</u>, 271 F.3d 438, 457 (3d Cir. 2001) as follows:  "under Apprendi, drug identity must be treated as an element ... when it results in a sentence beyond the relevant statutory maximum."  (<u>Id.</u> at 2.)  He concludes

---

[7]  Petitioner adds, in a footnote in his supporting brief:

Petitioner still objects to the fact that neither his attorney nor the Court informed him that in order to be exposed to or trigger the aggravated maximum penalty, the drug quantity as a predicate fact has to be determined by a jury beyond a reasonable doubt.  I reserve this point and [it] is incorporated by reference.

(Dkt. 1-2 at 1 n.1.)

16

that because "neither counsel nor the Court informed [him] that the drug type was an element of the offense and that he had a right for that to be determined by a jury beyond a reasonable doubt[,] ... [t]his was not authorized by [his] waiver of his constitutional rights since he had no notice of this element and thus could not have waived it knowingly, voluntarily and intentionally."  (Id.)  He claims that since Apprendi was the law at the time of his prosecution in this case, it was unreasonable for counsel not to advise him that the drug type was an element of the offense that the government would be required to prove beyond a reasonable doubt if the case went to trial.  (Id. at 6.)

He further argues that the Court made its finding of drug type by the preponderance of the evidence standard, which exposed him to a greater statutory maximum punishment than that authorized by the statutory elements in § 841(a)(1), which was error under Apprendi and Barbosa.  (Id. at 2-5.)  He concludes that because he "never knowingly, voluntarily and intentionally waived his Apprendi right to such a determination, thus his sentence under § 841(a)(1) should not have exceeded the lowest penalty at § 841(b)(3);" i.e., one year.  (Id. at 5.)  He argues that the failure of counsel to object to this Apprendi error was ineffective assistance, and prejudiced him because if counsel had so objected, he likely would have received a lower sentence.  (Id. at 5-6, citing United States v. Booth, 432 F.3d 542, 547 (3d Cir. 2005).)

It will be recalled that petitioner pled guilty to count one of the Superseding Indictment, which was a charge of conspiracy to distribute and possess with intent to

distribute more than 5 kilograms of cocaine.  (Crim. dkt. 71 at 6-8 & 28-31.)  Petitioner does not expressly state that if he had been specifically advised of his right to jury determination of drug type beyond a reasonable doubt, he would not have pled guilty to that offense.  (See dkt. 1 at 5; dkt. 1-2 at 1-6 and 24-26.)  He does allege that lacking notice of that element, he could not have waived his constitutional rights knowingly, voluntarily and intentionally.  (Dkt. 1-2 at 2.)  However, he does not claim to be entitled to set aside his guilty plea on this ground.  Rather, the relief he seeks on this claim is that "this court should vacate [his] sentence and resentence him not more than one year." (Dkt. 1-2 at 6.)  His theory on this claim for relief, which is explained by him in greater detail under his third listed claim (ineffective assistance by not informing him that he could enter an "open" guilty plea), is that "Petitioner pleaded guilty to only 21 U.S.C. § 841(a)(1), since he was not advised of his right to a jury determination beyond a reasonable doubt of the aggravating factor of drug type, and having not waived that right, the Court could only sentence him under § 841(b)(3), the 'catch-all' provision to a term of not more than one year."  (Id. at 15.)  We find that petitioner cannot meet his burden to establish this claim under the prejudice prong of the Strickland test, so our discussion of this claim will focus on that prong.

Petitioner does not cite, and our research has not revealed, any precedent that stands for the novel proposition that a defendant who pleads guilty to an indictment charging conspiracy to possess with intent to distribute more than 5 kilograms of cocaine

may be resentenced, on a Section 2255 motion, as if his offense involved only an

indeterminate amount of an unspecified controlled dangerous substance under the one-

year maximum penalty provision of 21 U.S.C. § 841(b)(3).  The penalty provisions of 21

U.S.C. § 841(b) create statutory minimum sentences, as well as statutory maximums,

above that level depending upon drug type and quantity.  A district court may not

disregard the statutory minimum of five years that flows from a conviction based upon

500 grams or more of cocaine, or the statutory minimum of ten years that applies to a

conviction based upon 5 kilograms or more of cocaine.  See 21 U.S.C. §§ 841(b)(1) and

(b)(2).  See generally United States v. Grier, 475 F.3d 556, 561-72 (3d Cir. 2007).

Given this statutory sentencing structure under 21 U.S.C. § 841, it is evident that

where, as here, a defendant has admitted in his plea agreement and sworn plea colloquy

that his offense involved the drug cocaine and the quantity of more than 5 kilograms, he

cannot obtain a sentence lower than the statutory minimum of ten years pursuant to a

Section 2255 motion without making the prejudice showing required by Hill.  That test

requires a petitioner to demonstrate that absent the allegedly ineffective plea advice of

counsel, he would have maintained his plea of not guilty and would have insisted on

going to trial.  See Hill, 474 U.S. at 60; see also United States v. Wesley, 55 Fed.Appx.

47, 51 n.1 (3d Cir. 2002) (same test to avoid harmless error standard under Rule 11

analysis).[8]  Therefore, we must reject as a matter of law his claim for the relief of being resentenced within the statutory maximum of one year under the penalty provision of 21 U.S.C. § 841(b)(3).

Reading petitioner's <u>pro se</u> motion liberally, as is appropriate, <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972), we will assume that he does intend to make the required showing of prejudice on this claim under the <u>Hill</u> standard.  Thus, we will assume he contends that if he had been advised by counsel that drug type (cocaine) would have to be proved to a jury beyond a reasonable doubt at a trial, he would not have pled guilty and would have insisted on proceeding to trial.  We will also consider him to be making a similar argument about allegedly not having been informed by counsel or the Court that drug quantity (5 or more kilograms of the cocaine) would have had to be similarly proved at trial beyond a reasonable doubt.  <u>See</u> n.9 <u>infra</u>.  These arguments, however, are conclusively shown to be without merit on the record in the underlying criminal action.

Petitioner made essentially the same claim when he moved to withdraw his guilty plea before sentencing, and this Court appointed substitute CJA counsel for him.  That

---

[8]  Petitioner cites <u>United States v. Booth</u>, 432 F.3d 542 (3d Cir. 2005), where our Court of Appeals stated that under the facts pleaded by that Section 2255 petitioner, the prejudice prong of the <u>Strickland</u> test would require him to "demonstrate that, but for his trial attorney's alleged ineffectiveness, he would have likely received a lower sentence."  <u>Id</u>. at 546-47.  <u>Booth</u> is distinguishable on this point because, as the Court of Appeals observed, even if Booth's Section 2255 motion were to be granted, it could only result in resentencing down to, but not below, the mandatory five-year minimum for his explosives offense under 18 U.S.C. § 844(i).  <u>Id</u>. at 547 n.7.  There, Booth was not seeking to go below that mandatory minimum or to overturn his trial conviction, but only to be resentenced with the potential benefit of guidelines credit for acceptance of responsibility.  The Court of Appeals ordered an evidentiary hearing on that issue.  <u>Id.</u> at 547-50.

issue, and related issues he raised, were thoroughly explored in an evidentiary hearing

conducted over three separate dates, with extensive briefing before and after that hearing.

(See crim. dkt. 111, 112, 114.)  We addressed the issue in our reported decision denying

that motion, as did the Court of Appeals in affirming our ruling.  Here we quote pertinent

portions of those opinions, beginning with our decision on the plea withdrawal motion.

> The Court held a plea hearing pursuant to Rule 11 to determine
> whether it would accept Garba's plea of guilty on March 11, 2002....
>
> The Court then proceeded to review the plea agreement with Garba
> on the record.  The Court ascertained that Garba had read and discussed the
> agreement with Rhoads.  The Court noted that Garba would be entering a
> plea of guilty to "conspiring to distribute and possess with intent to
> distribute more than five kilograms of cocaine."  The Court reiterated to
> Garba that the plea agreement stated the minimum sentence was ten years,
> and the maximum was life imprisonment....
>
> ....
> The Court next asked the government to question Garba on the record
> in order to establish a factual basis for the plea.  During the questioning,
> Garba conceded multiple times that the drug involved was cocaine, and that
> his "involvement with this conspiracy involve[d] the exportation of more
> than five kilograms of cocaine."  The Court accepted Garba's plea.
>
> Garba's sentencing hearing was held on June 26, 2002.  At that
> hearing, Garba stated that he had entered a plea of guilty on the
> understanding that there would be a hearing before his sentencing at which
> he could contest the amount of cocaine involved.  Garba said he wanted the
> chance to argue that the amount involved was under 15 kilograms, thus
> resulting in a lower base offense level.  When the Court pointed out that
> Garba had stipulated that the quantity was between 15 and 50 kilograms,
> Garba responded that he had believed that stipulation could still be
> contested before sentencing.  Garba said his attorney had told him he would
> have this opportunity.  At that point, the Court discontinued the sentencing
> and ordered a hearing on whether Garba should be permitted to withdraw
> his plea of guilty.
> ....

21

On the first hearing date, Garba testified that he thought he could still argue
the cocaine amount because Rhoads had assured him the stipulation would
not preclude such a claim.  He further testified that he had been part of a
conspiracy involving at least 5 kilograms of cocaine, but that the amount
had been under 15 kilograms.  Garba claimed that he had (1) not read the
stipulations, (2) not been paying careful attention to the Court's questions
during the plea colloquy, and (3) been just going through the motions.  On
the second hearing date, Rhoads testified that he did not tell Garba that he
could contest the amount recited in the plea, and that in fact he had
carefully explained that the stipulation was binding on both Garba and the
government.  Rhoads further testified that Garba had admitted to him
previously that the conspiracy involved more than 15 kilograms of cocaine.

Garba argues the Court should grant his motion under Rule
11(d)(2)(B) because (1) his plea was given under the mistaken belief that he
would be able to contest the amount of cocaine involved at a hearing before
the sentencing; (2) his plea was the result of ineffective assistance of
counsel in violation of the Sixth Amendment; and (3) the plea hearing
conducted by the Court violated Rule 11 because Garba was not made
aware that at trial the government would have to prove the quantity of
cocaine involved to the jury beyond a reasonable doubt....

United States v. Garba, 285 F.Supp.2d 504, 507-09 (D.N.J. 2003) (citations omitted).  We

ruled on these issues as follows:

The Court finds that Rhoads rendered reasonably effective
assistance.  Garba claims Rhoads performed deficiently because Rhoads
told him that he was not bound by the stipulations in the plea agreement,
and that he would have an opportunity to prove that the conspiracy involved
under 15 kilograms of cocaine....  By contrast, Rhoads testified that he told
Garba he would be bound by the stipulations in the plea agreement, and that
Garba understood that he would be bound.  Rhoads further testified that he
never told Garba he would have a chance to argue at a later hearing that the
amount of cocaine was under 15 kilograms....

The Court, based on the plea colloquy and the hearing on Garba's
motion, finds Rhoads's version of what transpired more credible.  As an
experienced federal public defense attorney, Rhoads was thoroughly
familiar with the effect that stipulations have on sentencing.  The notion

22

that he would misrepresent that effect to his client, especially when he knew full well that the Court would explain to Garba that stipulations are binding and cannot later be disputed, is dubious at best....  In sum, the Court finds no evidence of ineffective assistance of counsel by Rhoads.  Garba's motion to withdraw his plea will not be granted on this basis.
....

Garba [also] asserts that the plea colloquy did not conform to the stringent requirements of Rule 11.  Specifically, Garba complains of the Court's failure to instruct him that at trial a jury would have to determine drug quantity beyond a reasonable doubt....
....

Garba alleges ... that there is another, nonstatutory element to the unlawful objective of the § 846 conspiracy.  Though it is not listed as an element under § 841(a)(1), Garba contends the Court was required by ... Apprendi ... to inform him of the government's obligation to prove drug amount beyond a reasonable doubt....
....

The Court, assuming arguendo that failure to tell Garba that a jury would have to determine the amount of cocaine involved was error, finds the error to be harmless.  The Court first notes that Garba's contention that the Court was required to inform him that a jury would have had to have found the drug quantity to be between 15 and 50 kilograms, rather than 5 kilograms, is incorrect.  Per Apprendi, juries only have to find facts that would increase the statutory maximum sentence to which the defendant would be exposed.  The statutory maximum sentence for the crime to which Garba pleaded guilty, conspiracy to distribute and possess with the intent to distribute 5 kilograms or more of cocaine, is life in prison.  A finding that the amount of cocaine involved was no less than 15 but no greater than 50 kilograms would not increase the maximum potential sentence; it would only affect the sentencing range under the Federal Sentencing Guidelines, ... with which Apprendi is not concerned.  Thus, assuming that Apprendi modifies the requirements of a plea colloquy, the only instruction required in these circumstances is that a jury would have to determine, beyond a reasonable doubt, that the conspiracy involved at least 5 kilograms of cocaine.

Rule 11 violations ... do not automatically entitle a defendant to withdraw his plea.  If the violation did not affect the defendant's substantial rights, the error is harmless, and Garba's motion should be denied....

**Garba cannot claim that the Court's failure to inform him that at trial the government would have to prove to the jury that the conspiracy involved more than 5 kilograms of cocaine "affected [his] willingness to ... enter a plea of guilty."**  First, Garba's primary complaint is that he was not told the government would have to prove beyond a reasonable doubt that the amount was between 15 and 50 kilograms.  As discussed <u>supra</u>, however, the government would have no such burden: because any increase in quantity beyond 5 kilograms would not affect the statutory maximum sentence, <u>Apprendi</u> does not require that the jury find such a fact....  Second, while Garba testified at the December 2002 hearing that he would not have pleaded guilty had he known of the government's burden to prove drug amount at trial, his claim is not credible.  Garba has admitted throughout that the conspiracy involved greater than 5 kilograms of cocaine.  His only point of contention has been that the conspiracy did not involve 15 or more kilograms of the drug.  Accordingly, Garba cannot show that his substantial rights were harmed by the Court's omission in this case.  **The Court cannot credit Garba's assertion that he would have decided not to enter a plea of guilty upon learning the government had to prove beyond a reasonable doubt that which he himself had conceded from the first.**

<u>Id.</u> at 512-15 (citations omitted; emphasis added).

The Court of Appeals, in affirming our decision on the plea withdrawal motion,

ruled as follows:

Garba argues that the District Court should have granted the motion to withdraw his guilty plea "because (1) his plea was given under the mistaken belief that he would be able to contest the amount of cocaine involved at a hearing before the sentencing; (2) his plea was the result of ineffective assistance of counsel in violation of the Sixth Amendment; and (3) the plea hearing conducted by the Court violated Rule 11 because Garba was not made aware that at trial the government would have to prove the quantity of cocaine involved to the jury beyond a reasonable doubt."  After conducting an evidentiary hearing, the District Court carefully considered each of these arguments at length, ... and ultimately rejected them.

....  **We are satisfied that the District Court properly exercised this discretion in a manner consistent with our Circuit's precedent.  Its**

24

> **denial of Garba's motion to withdraw his plea was thorough, careful
> and well-reasoned.  We therefore accept its conclusion.**

United States v. Garba, 128 Fed.Appx. 855, 856 (3d Cir. 2005), cert. denied, 546 U.S.

912 (2005) (citations omitted; emphasis added).

The thoroughness of this Court's evidentiary hearing on petitioner's motion to

withdraw his guilty plea was prompted not just by our obligation to adjudicate that motion

properly, but also because we expressly anticipated that petitioner would later exercise his

right to file post-conviction collateral attacks on any resulting conviction.  We made it

abundantly clear to petitioner himself, as well as to participating counsel, that the purpose

of that plea withdrawal hearing was to make a complete contemporaneous record of the

recollections of himself and his trial counsel regarding advice of counsel regarding the

decision to plead guilty, as well as an exploration of all Rule 11 plea hearing issues he

had raised.  (See crim. dkt. 112 at 9-14.)  Indeed, precisely because the issue petitioner

now raises as the first claim in his Section 2255 motion had been raised by him at that

time, we directed at that hearing the following additional questions to be posed to him,

when he was asked and answered as follows:

(Sidebar conference)

> THE COURT:  I would like to know what Mr. Garba will say if asked
> whether had he known that at trial the Government would have had to prove
> beyond a reasonable doubt that he participated in a conspiracy involving 5
> or more kilograms, would he have taken the plea?  Your question was
> couched in terms of 15 to 50 and I know what that's based on, but I think
> the parallel question is to 5 kilograms, should be asked.

MR. BARRY:  I'll ask that question.

THE COURT:  We could say 5, at least 5.  Do you want to ask that?

MR. BARRY:  Sure.

THE COURT:  Okay, thank you.  That's all I have.

(End of sidebar conference)

BY MR. BARRY:

Q      Mr. Garba --

A      Yes.

Q      I have one additional question to ask of you.  Would you have entered a plea of guilty if the charge had been to 5 kilograms of cocaine?

THE COURT:  That's not the question, sir.  Your last question was, the relevant question was, was it Mr. Garba's -- or actually Mr. Garba added this -- he said, his understanding was that if he had been told before entering his plea, or while entering his plea, that the Government was required to prove the 15 to 50 kilos at trial, beyond a reasonable doubt, that he would not have taken the plea.  So, the next question would be, if he had been told before entering his plea that the Government was required to prove at least 5 kilograms at trial, beyond a reasonable doubt, would he have taken the plea?

THE WITNESS:  Yes.  That had always been my position.

THE COURT:  Okay.  Is that adequate, Mr. Barry, for your purposes, then?

MR. BARRY:  Yes, Your Honor.

(Id. at 100-01.)

This Court finds that as we have explained here, the files and records of this case

conclusively show that petitioner is not entitled to relief on his claim that he was

26

prejudiced by alleged ineffective assistance of counsel in not being informed by counsel, prior to pleading guilty to count one, that if his case went to trial the government would have to prove drug identity (cocaine) and quantity of 5 kilograms or more, to the jury beyond a reasonable doubt.  (Dkt. 1 at 5.)  See 28 U.S.C. § 2255.  The simple fact is, as he himself has testified and as this Court has already found (and been affirmed), petitioner would have pled guilty if he had been so informed at that time.  Therefore, we do not reach the first prong of the Strickland test in analyzing this claim.[9]

We further conclude that petitioner cannot establish that his sentence of 280 months was in violation of Apprendi and its progeny.  That sentence falls within the statutory sentencing range of ten years to life imprisonment for the offense charged in

---

[9]  The record shows that petitioner received a thorough and meticulous Rule 11 hearing when he pled guilty.  (Crim. dkt. 71.)  At that hearing he was not specifically told by this Court that drug type and quantity as alleged in the indictment would have to be proved to a jury beyond a reasonable doubt; such a statement was not typically provided in Rule 11 hearings in this Court at that time.  He was, however, informed of the exact charge against him in count one of the indictment (conspiracy to distribute and possess with intent to distribute more than 5 kilograms of cocaine), and the elements of that offense under 21 U.S.C. §§ 841(a)(1) and 846, and the applicable statutory mandatory minimum of ten years and maximum of life imprisonment.  He was also informed that he had a right to maintain his not guilty plea, at which point the government would have the burden to prove each charge in the indictment beyond a reasonable doubt at a jury trial.  (Id. at 17-24.)  The Court of Appeals found no error in the Rule 11 proceedings when it reviewed the conviction on appeal.  Garba, 128 Fed.Appx. at 856 (on initial appeal); see also United States v. Garba, 307 Fed.Appx. 698 (3d Cir. 2009) (on appeal after post-Booker remand for resentencing).

The Third Circuit has never, to our knowledge, had occasion to rule whether it would constitute ineffective assistance of counsel, post-Apprendi, for trial counsel to fail to give that specific advice to the client during plea discussions.  See generally Garba, 285 F.Supp.2d at 514 n.6 (listing unpublished Third Circuit opinions on the topic in the context of claims of Rule 11 error).

count one, on which he pled guilty and admitted those facts at the Rule 11 plea hearing. (Crim. dkt. 71 at 25-31.)  See Blakely v. Washington, 542 U.S. 296, 303 (2004) ("Our precedents make clear ... that the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*")  Indeed, the Court of Appeals scoured the record to find any non-frivolous issues when petitioner's post-Booker sentence was before it on appeal, in light of his then-attorney's Anders submission, and the Court did not even mention Apprendi as a potentially viable ground for attacking his conviction and sentence.  See United States v. Garba, 307 Fed.Appx. 698, 700-03 (3d Cir. 2009), cert. denied, 130 S.Ct. 1159 (2010).  Clearly, on the record of the underlying case in both this Court and the Court of Appeals, the claim that his sentence is illegal under Apprendi cannot be sustained.

### 2.    Claim Two:   Failure to advise of deportation risk of guilty plea

Petitioner makes the following factual allegation on his second claim:

> Counsel rendered ineffective assistance of counsel by not informing me that the guilty plea carried a deportation risk, thereby making the guilty plea involuntary and unintelligent.  I was prejudiced because I would have gone to trial or negotiated a plea agreement to include a deportation waiver if I had been so advised.

(Dkt. 1 at 6.)

Petitioner makes a two-part argument on this claim.  His first argument rests upon Padilla v. Kentucky, 559 U.S. 356 (2010), as follows:

28

> In <u>Padilla v. Kentucky</u>..., the United States Supreme Court held that "it is quintessentially the duty of counsel to provide ... available advice about ... deportation and the failure to do so clearly satisfies the first prong of the <u>Strickland</u> analysis."
>
> In this case, counsel failed to advise petitioner that by pleading guilty he faced the risk of deportation.  Petitioner would have insisted on going to trial had he been so advised.  This is not a lone assertion.  The record will reveal that Petitioner had moved to withdraw the guilty plea upon learning that he had received incompetent advice on another issue.  That is to say, had Counsel advised him on the deportation risk prior to entering the guilty plea, this advice would have further heightened what was at stake and Petitioner would have definitely insisted on going to trial.

(Dkt. 1-2 at 7 (citations omitted).)

His alternative argument, also based upon <u>Padilla</u>, is that trial counsel should have negotiated "deportation relief" as part of the plea bargain.  Petitioner contends:

> Counsel's performance in negotiating the plea bargain was deficient in that he should have negotiated a deportation relief as part of the plea bargain to cure the prejudice Petitioner would suffer for accepting the guilty plea.
>
> Petitioner submits that as a Lawful Permanent Resident (LPR) in the United States, the impact of his guilty plea on his ability to remain in the Country is a central issue which should have been resolved during the plea negotiating process and ultimately during the sentencing process....
> ....
> The <u>Padilla</u> court ... stated as follows:  "By bringing deportation consequences in this process, the defense and prosecution may well be able to reach agreements that better satisfy the interests of both parties.  As in this case, a criminal episode may provide the basis for multiple charges, of which only a subset mandate deportation consequences following conviction.  Counsel ... may be able to plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation, as by avoiding a conviction for an offense that automatically triggers the removal consequence."
>
> In this case, Petitioner was charged with a conspiracy under 21 U.S.C. § 846, to violate 21 U.S.C. § 841.  Counsel could have negotiated a

29

> conviction for a crime of possession under 21 U.S.C. § 844, which is a lesser offense included within the offense of 21 U.S.C. § 841.... This conviction would not automatically trigger the deportation consequence under the Controlled Substance Act....

(Id. at 9-11 (citations omitted).)

The relief sought by petitioner on this claim is to vacate the conviction or, in the alternative, to "vacate the sentence for Petitioner to renegotiate a new plea agreement conditioned on the Government granting a deportation waiver with subsequent acceptance by the Court." (Id. at 12.)  The government disputes each of petitioner's Padilla arguments in its opposition brief.  (Dkt. 11 at 10-11.)  However, we conclude that petitioner's Padilla claim is entirely barred by the recent ruling of the United States Supreme Court in Chaidez v. United States, 133 S.Ct. 1103 (2013), because petitioner's conviction became final before Padilla was decided.

The Supreme Court decided Chaidez to resolve a split among federal and state courts on whether Padilla applies retroactively.  Id. at 1107 & n.2.  Chaidez squarely holds as follows:

> This Court announced a new rule in Padilla.  Under Teague [v. Lane, 489 U.S. 288 (1989)], defendants whose convictions became final prior to Padilla therefore cannot benefit from its holding.

Id. at 1113, abrogating United States v. Orocio, 645 F.3d 630 (3d Cir. 2011).

The Padilla decision was issued on March 31, 2010.  Padilla, 559 U.S. at 356.  The record of petitioner's underlying criminal case in this Court conclusively demonstrates that his conviction became final on January 19, 2010.  That was the date when the Supreme

30

Court denied his petition for certiorari from the affirmance decision by the Third Circuit Court of Appeals following his post-Booker sentencing here.  Garba, 130 S.Ct. at 1159.

This Court holds that based upon this record, petitioner's claims premised upon Padilla cannot support post-conviction relief in this case.  Accordingly, we do not address his substantive arguments under Padilla.  For the same reasons, we find that an evidentiary hearing on those issues would not be appropriate.  See Rules Governing Section 2255 Proceedings for U.S. District Courts, Rule 8(a).

### 3.    Claim Three:  Failure to inform petitioner that he could enter an "open" guilty plea

Petitioner makes the following factual allegations on his third claim:

Counsel essentially advised Petitioner that he had only two options, i.e., either he accepted the Government's plea offer or he proceeded to trial. Counsel did not inform Petitioner of the third option of an "open" guilty plea that he could enter to resolve his case and receive a more favorable sentence.
....
Petitioner was prejudiced because the court would have accepted an "open" guilty plea to the 21 U.S.C. § 841(a)(1) charge and then convene a jury to determine the type of controlled substance and factors that would trigger an aggravated penalty....  Petitioner submits that if he had entered an "open" guilty plea, he would have received the due process protection on the aggravated maximum penalty, and certainly not incur the obstruction of justice enhancement and potentially receive the acceptance of responsibility points resulting in a lower sentence than the approximately 24 years he received.

(Dkt. 1-2 at 12-14.)

His reply brief seeks to clarify his position, stating as follows:

The claim [is] simply that Petitioner's defense counsel should have advised him that he had the option of entering an 'open' guilty plea without any

31

> stipulations attached.  Indeed, the long sentence Petitioner received was, in
> part, due to the dispute over Petitioner's misunderstanding of the
> stipulations in the plea agreement....  This could have been avoided had
> Counsel advised Petitioner effectively.

(Dkt. 12 at 3.)

Petitioner argues, as to ineffectiveness of counsel, that "[t]his failure to so inform Petitioner violated the rule affirmed by the Third Circuit Court of Appeals that a defendant has a right to be advised of the third option of an 'open' guilty plea," and counsel's failure to so advise was unreasonable under prevailing professional standards. (Dkt. 1-2 at 13, citing Booth.)[10]  His argument as to prejudice, quoted above, is that this Court would have accepted an open guilty plea to a violation of 21 U.S.C. § 841(a)(1), and then would "convene a jury" to determine the type and amount of substance as factors that would trigger an aggravated penalty.  (Id. at 14.)   He contends that under that procedure, he would not have incurred the obstruction of justice enhancement that this Court imposed during sentencing, and he potentially could have received acceptance of responsibility points, resulting in a lower sentence than the sentence he received.  (Id.) The guideline calculation underlying petitioner's sentence is described in detail below. See nn.12-15, with accompanying text, infra.

The relief that petitioner seeks on this claim is to have his sentence vacated and to be resentenced under the "catch-all" provision, 21 U.S.C. § 841(b)(3), to a term of not

---

[10]  An "open" guilty plea is a plea made by the defendant without entering into a plea agreement with the government.  Booth, 432 F.3d at 543 n.1 (citation omitted).

more than one year.  (Dkt. 1-2 at 15.)  He does not expressly state that if he had been specifically advised of his right to enter an open plea, he would have taken that option rather than pleading guilty pursuant to the plea agreement.  Rather, he contends that "as a matter of law and effect," he "pleaded guilty to only 21 U.S.C. § 841(a)(1), since he was not advised of his right to a jury determination beyond a reasonable doubt of the aggravating factor of drug type, and having not waived that right, the Court could only sentence him under § 841(b)(3), the 'catch-all' provision to a term of not more than one year."  (Id. at 14-15.)

Petitioner's argument on this claim is frivolous on its face in at least three respects.  First, he was under indictment not for conspiracy to distribute and possess with intent to distribute an indeterminate amount of an unspecified controlled substance.  The grand jury had indicted him (in count one) for conspiracy involving at least 5 kilograms of cocaine.  (Crim. dkt. 17 at 1-3.)  This Court could not have accepted an open guilty plea to that count without factual allocution by him, under oath, establishing the factual basis for his guilty plea to that charge.  See Fed.R.Crim.P. 11(b) and 11(c).  Second, there is no precedent for his notion that this Court could accept a guilty plea on that count as to the drug distribution conspiracy, but then "convene a jury" to determine the charged drug identity and quantity beyond a reasonable doubt.  Third, this Court could not have accepted an open plea to just one count of the indictment; petitioner would have had to plead guilty to all pending counts if he entered an open guilty plea.  See, e.g., Booth, 432

33

F.3d at 547.  Putting aside those obvious defects in his proposition, we can analyze his claim of ineffective assistance of counsel regarding the possibility of entering an "open" plea, based upon the record in this case and the applicable case law.

The Court of Appeals considered a Section 2255 claim alleging ineffective assistance of counsel for failing to advise a client of the possibility of entering an open plea in Booth, 432 F.3d 542.  There, Booth was indicted on two federal counts arising out of a single incident:  maliciously damaging property by explosives, in violation of 18 U.S.C. § 844(i); and possession of an unregistered firearm in the form of a bomb, in violation of 18 U.S.C. §§ 5841, 5861(d), and 5871.  The first count carried a mandatory minimum of 60 months imprisonment and the second count was a lesser charge.  The evidence was overwhelming against defendant.  The government offered to accept a guilty plea to count one, and possibly move for downward departure under 18 U.S.C. § 3553(3) if it determined that he cooperated against others, but it was unwilling alternatively to accept a plea to the lesser charge without his up-front cooperation.  He did not want to cooperate to incriminate others.  Because the parties could not reach a plea agreement, Booth went to trial and was convicted of both charges.  At sentencing, the court did not consider allowing him a downward adjustment in his guidelines offense level computation for acceptance of responsibility, because he had proceeded to trial.

Booth alleged in his subsequent Section 2255 motion that if his attorney had advised him of the possibility of entering an open plea to the charges, he would likely

have received a lower sentence because he would have at least been eligible for the acceptance of responsibility adjustment and likely could have received it.  The District Court denied the Section 2255 motion without an evidentiary hearing, but the Court of Appeals reversed and remanded for a hearing.  Id. at 543-50.

The Booth Court explained that based upon the showing Booth was able to make from his case records and his allegations, it was potentially likely that had he entered an open plea to both counts, he could have qualified for the total three-level downward adjustment under USSG § 3E1.1 for acceptance of responsibility.  It calculated that in his case that would have reduced his advisory guideline imprisonment range substantially, from 78-97 months down to 60-71 months (but not below the mandatory minimum of 60 months on count one), and because he was sentenced to a total of 90 months it would mean that he was exposed to an additional 19 to 30 months of imprisonment.  That, the Court ruled, would satisfy the prejudice prong of the Strickland/Hill test in Booth's case, because it would establish that "but for his trial attorney's alleged ineffectiveness, he would have likely received a lower sentence."  Id. at 546-47.

Discussing the performance prong of the Strickland standard, the Booth Court stated that the determination of whether counsel's performance was deficient for not advising of the possibility of entering an open plea was necessarily fact-specific, explaining as follows:

The determination of whether trial counsel's failure to inform Booth that he could enter an open plea was constitutionally deficient must be viewed through the prism of the specific facts in this case.  In this respect, two facts are key:  (1) the District Court itself recognized (and the Government does not dispute) that the evidence against Booth was "overwhelming"; and (2) the declaration of Booth's trial counsel acknowledges that Booth did not want to enter into a plea agreement because he did not want to provide incriminating information to the government regarding a possible co-defendant's role in the offense.... Booth's reluctance to cooperate with the Government was the deal-breaker. From this reluctance to cooperate, the Government wants us to determine that Booth's only other option was to go to trial.

It is clear, however, that another reasonable option was available. We have stated that "a defendant has the right to make a reasonably informed decision whether to accept a plea offer" because "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." United States v. Day, 969 F.2d 39, 44 (3d Cir. 1992) (quoting Hill, 474 U.S. at 56-57, 106 S.Ct. 366).....

In this case, Booth has raised sufficient allegations that his trial counsel deprived him of the opportunity to make a reasonably informed decision regarding whether to change his plea or proceed to trial because his trial counsel failed to inform him that he could enter an open plea.  As a result, Booth was potentially subject to an increase of 19 to 30 months imprisonment based upon his trial counsel's failure to advise him about all possible plea options.  These allegations, which have not been rebutted by the declaration of Booth's trial counsel, may support Booth's claim.  Thus, the District Court erred in denying Booth's habeas petition without holding an evidentiary hearing.

Id. at 549-50 (emphasis added).

Booth thus teaches that (1) whether the performance of defense counsel is

deficient for failing to advise of the possibility of entering an open plea is a case-specific

issue; (2) an open plea would have been a reasonable option if petitioner can show that he

likely would have received a lower sentence by entering that plea; and (3) petitioner is entitled to an evidentiary hearing on this Section 2255 claim if the case records and petitioner's allegations indicate that he may prevail on the claim.  Id.  Having made the fact-specific inquiry required by Booth in this case, we find that the case records here conclusively show that an open plea likely would not have resulted in a lower sentence for petitioner, and it would not have been ineffective assistance of counsel not to advise him about the possibility of entering an open plea at the time petitioner was deciding whether to take the government's plea offer or proceed at trial.

We begin by laying out the charges petitioner was facing at that time.  The Superseding Indictment against petitioner and others, filed in August, 2000, contained eight counts in which he was charged.  See n.2 supra.  Those counts were counts one, two, and four through nine.  (Crim. dkt. 17.)  The first count -- the count to which he eventually did plead guilty pursuant to the written plea agreement -- charged him with engaging in a conspiracy to distribute and possess with intent to distribute more than 5 kilograms of cocaine, contrary to 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846. (Id. at 1-3.)  That offense carried a statutory mandatory minimum of ten years imprisonment and a maximum of life.  21 U.S.C. § 841(b)(1)(A)(ii)(II).  Counts four through nine each charged him with a substantive offense of exportation of cocaine on or about a specified date, fitting within the time frame of the alleged count one conspiracy (and aiding and abetting), each in an amount of more than 500 grams, in violation of 21

37

U.S.C. § 953 and 18 U.S.C. § 2.  (Crim. dkt. 17 at 6-8.)  Each of those exportation

offenses carried a statutory mandatory minimum of five years and a maximum of 40 years

imprisonment.  21 U.S.C. § 960(a)(1) and (b)(2)(B)(ii).  Count two charged him with a

separate conspiracy to import into the United States, from Ghana and elsewhere, more

than one kilogram of heroin, contrary to 21 U.S.C. § 952, in violation of 21 U.S.C. § 953.

(Crim. dkt. 17 at 4-5.)  That heroin conspiracy offense carried a statutory mandatory

minimum of ten years imprisonment and a maximum of life.  21 U.S.C. § 960(a)(1) and

(b)(1)(A).

Fortunately for petitioner, by the time he actually made his decision to plead guilty

in early March, 2002 -- when his case was already in the jury selection process of his trial

here -- the government had opted to "streamline the prosecution" by dismissing count two

(the heroin importation charge), and counts eight and nine (two of the six substantive

cocaine distribution charges).  (See dkt. 11-5 at 16.)  Thus, when he did plead guilty on

March 11, 2002, he was on trial in this case on counts one, four, five, six and seven,

which had been renumbered by the government in a proposed redacted superseding

indictment for presentation to the jury.  (Id.)

Petitioner was simultaneously under an earlier-filed indictment in a separate case,

pending in our Camden vicinage, Criminal No. 97-218.  That federal indictment charged

him with an entirely separate conspiracy to distribute and possess with intent to distribute

more than 100 grams of heroin ("the Camden indictment").  (See crim. dkt. 74 at 1.)  The

Camden indictment was not consolidated with this case for trial, and was still pending when his case in this Court went to trial.  The Camden indictment was ultimately dismissed under the plea agreement that he did enter into in this case, but absent that plea agreement he would have had to resolve that case separately by plea or by adjudication at some later date.  (See crim. dkt. 108 at 6-7.)

Petitioner's plea agreement, which was the product of lengthy negotiations, was signed by him on March 11, 2002, before he entered his guilty plea on that same date. (See crim. dkt. 71, 74, 111, 112, 114.)  That agreement provided, inter alia, that he would plead guilty to count one of the Superseding Indictment in this case, and in exchange the government would move at sentencing to dismiss the remaining four counts in this case as well as the Camden indictment.  (Crim. dkt. 74 at 1.)  All of those events did take place in due course, pursuant to the plea agreement.[11]

The plea agreement also contained written stipulations, including the following:

- The offense of conviction and relevant conduct involved powder cocaine.

---

[11]  The four substantive counts in this case that were dismissed pursuant to the plea agreement were counts 4-7 in the Superseding Indictment filed on August 14, 2000.  (See crim. dkt. 17 at 6-7.)  Counts two and 8-9 against petitioner were verbally withdrawn by the government prior to trial.  Counts 3 and 10 were withdrawn simultaneously, but named other defendants.  (See dkt. 11-5 at 16 (prosecutor letter dated March 4, 2002).)  At that time, the government prepared two alternative forms of redacted superseding indictments for use at trial, id., but neither was actually docketed because petitioner pled guilty during jury selection. Petitioner's original and amended Judgments of Conviction correctly describe that during his sentencing, counts two and 4-9 of the (unredacted) Superseding Indictment were dismissed on government motion.  (Crim. dkt. 103 at 1; crim. dkt. 159 at 1.)  The Camden indictment was Criminal No. 97-218 (JEI), which was dismissed without further proceedings immediately after petitioner's original sentencing in this case.  (See CM/ECF docket.)

- The applicable quantity of powder cocaine was at least 15 but less than 50 kilograms, so the base offense level was 34.

- The government would agree that Garba should receive a two-level downward adjustment for acceptance of responsibility under USSG § 3E1.1(a), if his acceptance continued through the date of sentencing.

- The parties agreed that Garba should not receive an additional decrease of one level for acceptance under USSG § 3E1.1(b)(2), because he had not timely notified authorities of an intention to enter a plea of guilty.

- The government would argue that Garba should receive a two-level upward adjustment for an aggravating role, under USSG § 3B1.1(c), and Garba could argue against that adjustment.

- The government agreed that the evidence does not prove, by a preponderance of the evidence, that Garba used or attempted to use a person less than 18 years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense; therefore an increase of two levels under USSG § 3B1.4 was not appropriate.

(Crim. dkt. 74 at 6.)

Our next task in addressing this claim of petitioner's Section 2255 motion is to describe the sentence that he actually received, and how this Court arrived at that sentence. Then we will analyze whether he can establish the prejudice prong of this claim, that an open plea would likely have resulted in a lower sentence in this case.

It will be recalled that petitioner was sentenced twice in this action, because his direct appeal was pending when Booker was decided in 2005, and the matter was remanded for resentencing under the advisory guidelines scheme recognized in Booker. See Sec. I supra. This Court made the same guidelines calculation at each sentencing hearing, finding a total offense level of 38 and criminal history category II, resulting in an

40

advisory guidelines imprisonment range of 262 to 327 months.  (Crim. dkt. 161 at 25-27; crim. dkt. 117 at 60-64.)  The first sentencing hearing resulted in an imprisonment term of 320 months.  (Crim. dkt. 103 at 2; crim. dkt. 117 at 100-05.)  The resentencing hearing resulted in a term of 280 months, which is the sentence petitioner is currently serving.  (Crim. dkt. 159 at 2; crim. dkt. 161 at 62-67.)  Thus, both sentencing hearings produced imprisonment terms that fell within the 262 to 327 month guideline range for a total offense level of 38 months and criminal history category II.[12]

The guidelines issues at both sentencing hearings were primarily focused upon calculation of petitioner's total offense level.  The only dispute about criminal history was whether petitioner's involvement in the count one conspiracy spanned a period that included his probation term on his earlier federal conviction, which we found to be true.  (Crim. dkt. 117 at 60-61; crim. dkt. 161 at 26.)[13]

This Court made its identical offense level computations at both sentencing hearings using the guidelines version effective April 30, 2003.  Use of that guidelines

_____

[12]  The difference between the original sentence and the final sentence derived from our decision, at the resentencing hearing, to grant a one-level variance for post-offense rehabilitation efforts.  The resulting guideline range, by analogy to offense level 37 and criminal history category II, was 235 to 293 months.  That range overlapped with petitioner's actual guideline range of 262 to 327 months.  As we explained, the sentence of 280 months was by variance, "in order to highlight, to defendant ... himself, as well as to the world, that we do find that Mr. Garba's post offense rehabilitation effort has been truly extraordinary."  (Crim. dkt. 161 at 63-64.)  The Court of Appeals found no error in that sentence.  Garba, 307 Fed. Appx. at 702-03.

[13]  Petitioner did seek a downward departure in criminal history category pursuant to USSG § 4A1.3 (overrepresentation of criminal history), but that motion was denied.  (Crim. dkt. 117 at 71-82; crim. dkt. 161 at 28-38.)

41

edition is explained in the margin.[14]  The total offense level of 38 was based on the

following judicial findings, which we reached by a preponderance of the evidence:

Base Offense Level:  Powder cocaine of at least 15 but less than 50 kilograms.
USSG § 2D1.1(a)(3) and (c)(3).                                              <u>34</u>

Role in the Offense:  Organizer/leader/manager/supervisor.
USSG § 3B1.1(c).                                                           <u>+2</u>

Obstruction of Justice:  Defendant did obstruct justice.
USSG § 3C1.1.                                                             <u>+2</u>

Adjustment for Acceptance of Responsibility:  None.                       <u> 0</u>
USSG § 3E1.1(a)

Total Offense Level:                                                      <u>38</u>

(Crim. dkt. 117 at 59-60; crim. dkt. 161 at 12-26.)[15]

Petitioner argues in his Section 2255 motion, looking at this guideline calculation

underlying his sentence, that he was prejudiced because if he had entered an open plea he

would "certainly not incur the obstruction of justice enhancement and potentially [would]

---

[14]  We used the April 30, 2003 version of the guidelines for petitioner's original sentencing hearing in October, 2003, because that was the current version and presented no ex post facto problems.  (Crim. dkt. 115 at 8-9.)  That version consisted of the November 1, 2002 bound volume and supplements effective January 25, 2003 and April 30, 2003, but the supplements had no effect on petitioner's guideline calculation.  We used the same version for petitioner's post-<u>Booker</u> resentencing on November 28, 2007, with the consent of the parties. (Crim. dkt. 161 at 10-11.)

[15]  The conduct alleged in the four substantive counts remaining against petitioner in this case, as of the date of his guilty plea on March 11, 2002, referred to cocaine courier trips that were included as part of the cocaine quantity of the count one conspiracy to which petitioner pled guilty, so that conduct produced no additional offense level adjustments.  (<u>Compare</u> crim. dkt. 17 at 6-7 (Superseding Indictment) <u>with</u> crim. dkt. 117 at 38 (count four conduct), 38-39 (count five conduct), 63-64 (count six conduct), and 55-56 (count seven conduct).)

receive the acceptance of responsibility points." (Dkt. 1-2 at 14.) He also contends that the long sentence he received was due in part to the stipulations in the plea agreement, which would not have been present in an open plea. (Dkt. 12 at 3.) We understand the latter point to refer to the plea agreement stipulations that the count one offense and relevant conduct involved powder cocaine and the applicable quantity was at least 15 kilograms. (Crim. dkt. 74 at 6.)

The record of the underlying criminal case conclusively demonstrates, however, that the evidence does not support these contentions. What the voluminous record of his sentencing hearings clearly shows is that if petitioner had entered an open plea, and thus proceeded to sentencing with all sentencing issues open for dispute, the sentence he would have received would be the same as, or worse than, his existing sentence.[16] The fact is that due to petitioner's extreme and continued contentiousness after his motion to withdraw the guilty plea was denied, we held an exhaustive evidentiary hearing on every sentencing issue he raised. (Crim. dkt. 115, 116, 117.)

The evidentiary sentencing hearing consumed three days for the original sentencing and was carefully reviewed in another full day for resentencing. (Crim. dkt. 115, 116, 117, 161.) Those hearings were just as thorough as would have been necessary

---

[16]  We have already discussed and rejected, at the beginning of this subsection, petitioner's frivolous argument that he could have entered an open guilty plea to count one alone, and then have a jury "convened" to determine whether the substance was cocaine and the amount was more than 5 kilograms, thus potentially avoiding the statutory penalty of ten years to life imprisonment under 21 U.S.C. § 841(b)(1)(A)(ii)(II).

if there had been an open guilty plea to all of the then-pending charges:  counts one and four through seven of the Superseding Indictment.

The result of those sentencing hearings was that the adverse findings upon which petitioner's guideline offense level was based were not the result of his stipulations -- which he had thoroughly repudiated by the time of his original sentencing hearing -- but instead were based upon the record made by the parties during the adversarial process of that evidentiary hearing.  (Crim. dkt. 116 at 28-30; crim. dkt. 117 at 57-59.)  Only the favorable stipulations in his plea agreement, which the government to its credit continued to honor, saved him from a potentially worse guideline calculation.  These circumstances are summarized below.

The government presented at the evidentiary sentencing hearing the testimony of case agent Timothy Mahoney and an impressive array of exhibits in evidence.  Those exhibits included a recorded incriminating conversation among petitioner (as we found, but he denied) and a co-conspirator and a confidential informant, as well as records of numerous telephone and pager communications attributable to petitioner and others in the scheme, hotel records, detailed reports of arrests, interviews and even affidavits of co-conspirators providing extensive corroboration of the investigation against petitioner.  (Crim. dkt. 115 at 15-130; crim. dkt. 116 at 3-28.)  The original Presentence Report contained approximately fifty paragraphs of information about the count one conspiracy and petitioner's role, as well as the included conduct of the four substantive counts, all of which we found reliable based upon the evidentiary hearing.  (Crim. dkt. 117 at 28.)

44

Petitioner testified at length at the evidentiary sentencing hearing, and submitted a

sworn written statement.  (Crim. dkt. 116 at 31-151; crim. dkt. 117 at 15-26.)  His efforts

before and during the hearing succeeded only in garnering for him the obstruction of

justice enhancement that we imposed, along with loss of the anticipated two levels of

guideline credit for acceptance of responsibility.  (Crim. dkt. 117 at 51-60.)

Here we quote verbatim this Court's rulings on adjustments for role in the offense

at that hearing.  We begin with this lengthy quote because it was our first substantive

sentencing ruling at the hearing, and by necessity it summarized in some detail the nature

of this cocaine distribution conspiracy and petitioner's role in it.[17]

The government had requested, as limited by the plea agreement stipulations, only

a two-point upward adjustment for role in the offense.  Petitioner had opposed that

request and had requested a downward mitigating role adjustment.  Our ruling on those

issues was as follows:

> The Court will assign the recommended adjustment for role in the
> offense at paragraph 97 [of the PSR], and the Court denies the defendant's
> corresponding request to assign a mitigating role downward adjustment
> under Section 3B1.2.

> The government has produced an impressive array of evidence at this
> hearing.  The Federal Rules of Criminal Procedure provide ... that at
> sentencing the Court may accept any undisputed portion of the pre-sentence
> report as a finding of fact but must, for any disputed portion of the pre-
> sentence report or other controverted matter, rule on the dispute or
> determine that a ruling is unnecessary either because the matter will not

---

[17]  When we quote court transcripts here, we correct clerical errors but make no other
changes to the text.

affect sentencing or because the Court will not consider the matter at sentencing.  In compliance with ... those portions of the rule, I hereby hold that the contents of the pre-sentence report as they pertain to Mr. Garba's own participation and reasonably foreseeable involvement in the charged conspiracy is sufficiently extensive to merit this role adjustment under 3B1.1(c), and that there are no facts to justify applying a 3B1.2 mitigating role downward adjustment.

[T]he Court recognizes its discretion to both assign an aggravating role under 3B1.1 and assign a mitigating role under 3B1.2.  This Court does not find that the facts of this case warrant such treatment, and this Court finds that the evidence that has been adduced at this sentencing hearing is overwhelming in support of at least a two-point upward adjustment for role in the offense for Mr. Garba.

The Court has had the opportunity to evaluate the evidence that has been presented by the government in support of this adjustment and the testimony of both the case agent, and in opposition that of the defendant. The Court finds the defendant's testimony in sum to be unconvincing, to say the least, when compared with the extensive testimonial, affidavit and documentary evidence marshaled by the government to establish the facts in issue.

I wish to incorporate by reference in this ruling all of the evidence in this sentencing hearing, and particularly the closing summary statements of [the prosecutor], in which he summarized in elaborate detail the interrelation between the statements of individuals and the corroborative mass of documentary evidence.

I have compared the evidence presented during this evidentiary hearing with the narrative which is contained in the pre-sentence report at paragraphs 19 through 72, and I find that the evidence presented at this hearing entirely supports all of the statements contained in those paragraphs describing the offense conduct of Mr. Garba in this overall conspiracy, and I hereby adopt without change the statements set forth in those paragraphs of the pre-sentence report.

The factors the Court should consider, as set forth in the commentary to the aggravating role provision, 3B1.1, include, at application note four, the exercise of decision-making authority; the nature of participation in the

commission of the offense; the recruitment of accomplices; the claimed right to a larger share of the fruits of the crime; the degree of participation in planning or organizing the offense; the nature and scope of the illegal activity; and the degree of control and authority exercised over others, and noting that there can be of course more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.

We do not have any evidence concerning the splitting of the fruits of this extremely large-scale, long-term conspiracy in terms of what the main organizers actually profited from it.  We have ample evidence as to what the couriers were paid and what the couriers were given in the way of travel expenses, and we also have some evidence of monies being expended to purchase and to be paid for deliveries of cocaine from the United States origin to the European destination, but we do not know what the profit picture was.

Leaving that one factor aside, this Court finds that Mr. Garba exercised significant decision-making authority in the overall conspiracy; that the nature of his participation in commission of the offense was that surely of an organizer, manager and supervisor; that he participated in recruitment of accomplices, both directly and at a supervisory level; and that he participated in numerous facets of the planning and organizing of this extended, ongoing conspiracy, including contacting of drug suppliers; meeting with and purchasing from drug suppliers; soliciting couriers; soliciting investors; meeting with couriers; providing couriers with cocaine packed in various concealment packages; packaging the cocaine for delivery to the couriers; supervising the arrival and departure of couriers in this country and acting as a contact point for the arrival and further instruction of couriers at the European destinations; and receiving proceeds of drug sales from money couriers returning into this country.  That is a nonexclusive list of Mr. Garba's demonstrated aspects of direct participation in this conspiracy....

I might add that I specifically find that Mr. Garba was personally involved, as described in the pre-sentence report, with courier trips by Patrick Akinpeloye, Raymond Williams -- I'm talking about drug courier trips --, George Darko Mensah, Pip Obeng, Yaw Amponsah, Ivy Osei, Lasisi Gyima, Doris Sarpong, Gladys Antwii, Lucy Nyameke, Charlotte Amponsah, Hassan Ahmen, and Baba Seidu, all as set forth in the evidence adduced at this sentencing hearing.  **To say that a two-point upward**

**adjustment for role in the offense is warranted by this evidence is an understatement**, and I so find that he is to be assigned the two-point upward adjustment under Section 3B1.1.

Now, defendant argues that he should receive a mitigating role because he was only a middleman, and he seeks to have this Court make specific findings concerning the relative relations of various levels of this conspiracy. The Court does not find that Mr. Garba's participation in the offense makes him "substantially less culpable than the average participant."

As set forth in the pre-sentence investigation report and aptly summarized at paragraph 21, this investigation identified 15 principals involved in orchestrating the cocaine smuggling scheme, five cocaine suppliers, 34 cocaine couriers, 11 money couriers, six receivers of cocaine in England, two distributors of cocaine in England, and two receiver-distributors of cocaine in Switzerland. And that is based only on what this large-scale, long-term, international investigation has been able to document. I find that Mr. Garba was easily and clearly included in the group of the approximately 15 principals involved in orchestrating this cocaine smuggling scheme, and he is clearly not entitled to any mitigating role adjustment in his sentencing.

(Crim. dkt. 117 at 26-31 (emphasis added).)

The sentencing hearing next moved to the intertwined issues of whether petitioner should be entitled to the two-level downward adjustment for acceptance of responsibility under USSG § 3E1.1(a), and whether petitioner's own conduct after agreeing to plead guilty warranted an obstruction of justice upward adjustment under USSG § 3C1.1, as requested by the government. After vigorous oral argument presented by the parties, this Court ruled against petitioner on those issues. We also found it necessary to make findings about cocaine quantity despite the plea agreement stipulation of more than 15 kilograms, explaining as follows:

48

The sections of the guidelines that are applicable to these two issues are first, 3E1.1(a), acceptance of responsibility, stating [quote].  The commentary to that section states, "In determining whether a defendant qualifies under Subsection (a), appropriate considerations include, but are not limited to, the following:  (A) Truthfully admitting the conduct comprising the offense of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under Section 1B1.3, relevant conduct....  A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection.  However, a defendant who falsely denies or frivolously contests relevant conduct that the Court determines to be true has acted in a manner inconsistent with acceptance of responsibility."

....

Section 3C1.1, pertaining to obstruction of justice, provides ..., "If (A) the defendant willfully obstructed or impeded or attempted to obstruct or impede the administration of justice during the course of the investigation, prosecution or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (1) the defendant's offense of conviction and any relevant conduct, or (2) a closely related offense, increase the offense level by two levels."  The commentary provides a non-exhaustive list of examples of the types of conduct to which this adjustment applies including committing perjury and providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense....

....

**I find that defendant's plea to this offense, which is knowingly and intentionally conspiring to distribute and possess with intent to distribute more than five kilograms of cocaine, is fully supported by the colloquy in his plea hearing.  But I further find that he has falsely denied and frivolously contested a great range of relevant conduct that is pertinent to his offense of conviction and is pertinent to the findings of fact that the Court must make in order to determine the offense level in this case.  And I further find that he has made these false denials both to the law enforcement officers in the course of his effort to withdraw his guilty plea and in the course of his testimony during the withdrawal of the plea evidentiary hearing and his testimony during this sentencing hearing.**

49

For these reasons, the Court will deny him the two point downward adjustment for acceptance of responsibility because of his post plea agreement conduct, and the Court will impose upon him the two point upward adjustment for obstructing and impeding the administration of justice. In making this ruling, I incorporate by reference all of the oral argument that has been provided by the government during this portion of the sentencing hearing when the government has presented its oral argument on acceptance of responsibility and obstruction of justice. I also incorporate by reference both the government's briefing materials on this point and of course the defendant's opposing briefing materials on this point, which I have fully considered in making this ruling.

I find that in the course of defendant's conduct after entering into the plea agreement, he did lie at his plea hearing when he stated, "I don't know who Tony is," and he also lied in that same vein on page 25 when he said, "I was only involved with Polanco, not Tony." I also find that he lied during his withdrawal evidentiary hearing when he denied having been involved in a conspiracy in which his involvement, his own involvement, included more than 15 kilograms of cocaine. I find that he repeated that lie during his sentencing hearing.

I also find that he lied during the sentencing hearing by denying that it is his voice on the consensually recorded tape of March 5, 1996. In fact, under withering cross examination during this sentencing hearing, as he persisted in that falsehood, Mr. Garba himself looked around the courtroom and despairingly sought to invoke his Fifth Amendment right as to whether he is the person named Osman on that tape. I find that he lied by minimizing his role involvement in this conspiracy by denying or falsely refusing to acknowledge his numerous telephone calls with the likes of Hassan Ahmed and Ivy Osei and other participants at various levels of this long term, multi-player conspiracy.

This is against a background of an individual who has lied at every documented step in his existence in this country. He came to this country as an illegal alien. He received the benefit of the amnesty program in 1990. He sustained a federal felony conviction in 1992 which involved lying, specifically a violation of 18 U.S.C. § 1544 and 31 U.S.C. § 5316(A)(1)(A), failure to declare currency and improper use of a passport. His offense conduct in that case was that he was arrested while attempting to leave New York City en route to Accra, Ghana, with $75,000 in undeclared U.S. currency secreted inside his shoes, his pants pockets and a brown envelope

inside his luggage, and produced a passport from Ghana identifying himself in a false name.  He gave the unlikely story that he lost his passport and used another's passport and identification until he could obtain replacements.

I find that he lied to the Probation Office, as set forth in paragraph 109 of the pre-sentence report, ... while Mr. Garba was on probation and being supervised by United States Probation Office [on the 1992 conviction], he obtained from George Darko Mensah falsified documents that attempted to show that he legitimately worked for Darko Mensah at an employer in New York....  [A] more realistic characterization of Osman Garba's employment and source of income while living in the United States is ... that he was involved in a cocaine smuggling operation operating in Newark and New York City during the period of his probation.  This of course is corroborated by any number of the statements that the government has produced in this sentencing hearing by co-conspirators and by the independent documentation that the government has obtained in its investigation and outlined during this sentencing hearing.

....

And I find specifically that he lied here in denying that he was involved in 15 or more kilograms of cocaine, which is relevant conduct and a determination involving quantity of cocaine that the Court is compelled to make in the course of sentencing unless it is stipulated.  He attempted to repudiate his stipulation contained in the plea agreement by presenting his withdrawal of the plea motion, and although the Court has not been compelled to find the quantity of drugs in this sentencing because the Court found that it must uphold the stipulation because the plea agreement was validly entered into, nevertheless in making this determination that Mr. Garba has lied to this Court on numerous material matters pertinent to determining relevant conduct in this case, I will note for the record that a conservative totaling of the quantities of cocaine that have been described by couriers and/or found in possession of couriers, as described in the sentencing hearing, produces a total of approximately 32 kilograms of cocaine.

This is not an exact total, nor need it be, but if you take the April 21, Patrick Akinpeloye, April 21, 1995, his trip; and -- all these are drug courier trips to Europe -- take two trips reported by Raymond Williams to Amsterdam in September and December of 1995; and you take the June and

July, 1996, George Darko Mensah trips; and you take the June, 1996 Pip Obeng trip; and you include three trips by Lasisi Gyima in August, 1996, September, 1996 and October, 1996; and you include the August, 1996 trip of the three female couriers who have been named in the record; and the August, 1996 Ivy Osei trip[18]; and the July, 1996 Yaw Amponsah trip; and the November, 1996 Charlotte Amponsah trip; and the November, 1996 Hassan Ahmed trip; and the December 30, 1996 Baba Seidu trip, you get about 32 kilograms of cocaine.

And if you compare that to the affidavit testimony of Pichardo and Ramon Ramos [cocaine dealers] as described in this sentencing hearing in the testimony of Agent Mahoney, we have -- in terms of the supply end of this venture attributable to Mr. Garba -- Ramon Ramos initially made a three-kilo delivery to Osman Garba at a location adjacent to the Newark train station.  Then for about three months between the end of 1996 and early 1997, Ramon Ramos delivered to Osman Garba an additional approximately 20 kilos in one to two kilo amounts per week at street locations in Newark, never permitting Ramon Ramos to see where Mr. Garba was currently living.  So you have 23 kilos there from Ramon Ramos's description, which is to some degree corroborated by George Darko Mensah's identification of Ramon Ramos.

And then you have Pichardo, who describes a total amount delivered to Garba by him as approximately 12 kilos of cocaine.  So we add those and we get 35 kilos of cocaine there, not including the approximately four kilos of cocaine that Mr. Garba by his own admission purchased from Mr. Polanco and any additional amounts that Mr. Polanco might have been able to ascribe to Mr. Garba if asked.  So we see the supply end of this being in

---

[18]  The drug courier trip taken by Ivy Osei, as part of this conspiracy, ended in her arrest in Birmingham, England on August 29, 1996.  She possessed 3.3 kilograms of cocaine concealed in bed sheets, and she was traveling with a four-year-old child.  (Crim. dkt. 115 at 35-38; crim. dkt. 116 at 165-66.)  This was the conduct underlying substantive count four of the Superseding Indictment, which was dismissed as part of the plea agreement.  (Crim. dkt. 17 at 6; crim. dkt. 103 at 1.)  Stipulation number five in the plea agreement prevented the government from using this evidence about the involvement of children to seek an additional two-point upward adjustment in petitioner's offense level score pursuant to USSG § 3B1.4.  (Crim. dkt. 74 at 6.)  That was a negotiated feature in the plea agreement.  (Crim. dkt. 114 at 20-21.)  If petitioner had entered an open guilty plea, he would not have had the benefit of that stipulation and this Court would likely have found that upward adjustment applicable, based on a preponderance of the evidence.

52

excess of 30 kilos, and we see the courier departure end of this being in excess of 30 kilos, all attributable to Mr. Garba and his involvement, with or without other investors, in those trips.

**I hereby find that the government has established by at least a preponderance of the evidence both that Mr. Garba's involvement in this conspiracy falls at the offense level of 15 to 50 kilograms; and that Mr. Garba has lied to the officers and to this Court subsequent to the entry into his plea agreement in denying those amounts.**

**So for all of these reasons, as well as the additional reasons summarized by the government ..., I hereby hold that the two-point upward adjustment for obstruction of justice is applicable in this case, ... and I hereby eliminate from the adjusted offense level computation the two-point downward adjustment for acceptance of responsibility.... And the totaling then of these figures is ... base offense level of 34; ... two points for role in the offense; ... two points for obstruction of justice; total offense level, 38.**

(Id. at 51-60 (emphasis added).)

It is clear from an examination of the records and files of the underlying criminal case as summarized here, that petitioner cannot establish the prejudice prong of his claim of alleged ineffectiveness of trial counsel in the absence of advice about the option of an open guilty plea.  When he entered into the plea agreement and pled guilty on March 11, 2002, he was facing trial on counts one and four through seven of the Superseding Indictment, which were the cocaine distribution conspiracy in an amount of more than five kilograms (count one), and four substantive charges alleging specific cocaine courier exportation trips each in alleged amounts of over 500 grams.  (Crim. dkt. 17 at 1-3, 6-7; dkt. 11-5 at 16.)  He would have had to plead guilty to all five of those counts in an open plea.  The statutory range of imprisonment for count one alone is ten years to life.  21

U.S.C. § 841(b)(1)(A)(ii)(II).  Therefore, any sentence within that range would satisfy the

constitutional requirements of Apprendi.  See subsection 1 supra.  At sentencing on an

open plea, the Court would be obliged to make the guideline calculations, including

determining cocaine quantity attributable to petitioner.  The government would have

persisted in its position that the quantity for guideline purposes was more than 15 but less

than 50 kilograms.  Petitioner would have been entitled to dispute that amount, and

contend that it was in the range of more than five but not more than 15 kilograms.  In fact,

the record shows conclusively that petitioner would have demanded that factual hearing,

because that was the basis on which he moved to withdraw his guilty plea.  See Garba,

285 F.Supp.2d at 507-09.  Petitioner would have failed in his dispute of the 15 to 50

kilogram amount, as we have seen in the evidentiary sentencing hearing that was actually

conducted in this case.  In the process, petitioner would have testified as he did during the

evidentiary sentencing hearing, and would have lost the two-points reduction for

acceptance of responsibility and would have sustained the two-points enhancement for

obstruction of justice that we did find in his case.  We further find, based on the record of

his actual sentencing hearing, that without the stipulations in his plea agreement,

petitioner likely would have sustained one or two additional points of upward adjustment

for his role in the offense under USSG § 3B1.1(a) or (b), and he would have incurred the

two-point enhancement for use of a child under USSG § 3B1.4.  See n.18, with

accompanying text, supra.

54

All in all, this record conclusively shows that petitioner would not likely have obtained a more favorable sentence if he had entered an open guilty plea, and indeed he likely would have faced a significantly higher guideline offense level.  If, as is likely, that level had been 41 or 42 rather than the level 38 that he did receive, his advisory guideline range would have moved from 262-327 months to 360-life on the sentencing table.  USSG Ch.5, Pt.A.  The Section 2255 motion on this claim must be denied, based upon these findings on the prejudice prong of the <u>Strickland</u>/<u>Booth</u> test.  <u>Booth</u>, 432 F.3d at 546-47.[19]

Given this ruling, it is not necessary for the Court to make additional findings on the performance prong of the test.  <u>Strickland</u>, 466 U.S. at 697.  Nevertheless, petitioner's claim on this ground fails under that standard as well.  Again referring to the existing records and files in this case, we can state with assurance that it would not have been deficient performance for his trial counsel not to have advised him of the possibility of entering an open plea at the time he pled guilty, because it was not foreseeably likely even at that time that he would have received a lower sentence that way.  <u>Booth</u>, 432 F.3d at 549-50.

When petitioner pled guilty pursuant to the plea agreement on March 11, 2002, defense counsel knew many facts about the case and his client.  The most pertinent facts that he knew, for purposes of this issue, were as follows:  (1)  The Court could not accept an open guilty plea unless petitioner admitted under oath his guilt on count one, which

---

[19]  This analysis is also pertinent to our discussion of the performance prong of this claim, which follows in this subsection.

55

was the alleged conspiracy to possess with intent to distribute more than five kilograms of cocaine, as well as the four remaining substantive counts that were proceeding to trial. (2)  At sentencing, the government would seek a base offense level of 34, corresponding to an amount of cocaine of more than 15 kilograms attributable to petitioner, and the government would present its overwhelming proofs in support of that contention.  (Crim. dkt. 114 at 7, 16-17, 22-24.)  (3)  At sentencing, petitioner would likely insist on testifying -- again under oath -- to try to minimize his participation to an amount between five and 15 kilograms, so as to obtain a base offense level of 32 which he sought.  (Crim. dkt. 112 at 19-20.)  (4)  Petitioner had a documented history of deceitful conduct against the United States, including but not limited to his initial entry as an illegal alien; his 1992 federal conviction for concealed currency and false passport; and his attempt to obtain a U.S. visa to leave Ghana using falsified identification documents in 2000, shortly before he was arrested there and extradited in this case.  (Crim. dkt. 114 at 7; crim. dkt. 117 at 55-57.)  (5)  During the many months that defense counsel worked with petitioner on trial preparation and plea negotiations, petitioner had repeatedly admitted to his counsel that he was involved in over 15 kilograms, then would oscillate to denying that amount. (Crim. dkt. 114 at 50-55, 61-62.)  Thus, defense counsel could have had no confidence in his own client's credibility on key facts in a sentencing hearing on an open guilty plea.[20]

---

[20]  Defense counsel also had a professional obligation, as an officer of the court, to refrain from knowingly eliciting perjury from his client at any sentencing hearing.  See Local Civil Rule 103.1(a) (Professional Responsibility), made applicable in criminal cases pursuant to Local Criminal Rule 1.1; New Jersey Rules of Professional Responsibility 3.3(a)(4) and 3.3(c).

Those circumstances strongly compel the conclusion that it would have been reasonable for competent defense counsel, at that time, to have expected that an open guilty plea to counts one and four through seven of the Superseding Indictment, followed by the inevitable evidentiary sentencing hearing, would have resulted in a more severe sentence in this case than the one his client would likely receive based upon the stipulations in his plea agreement.  In addition, it was reasonable for that same counsel, who also represented petitioner on the then-pending Camden indictment, to weigh heavily the fact that the proposed plea agreement would completely extricate petitioner from that heroin conspiracy charge, which itself carried a statutory imprisonment range of five to forty years.  (See crim. dkt. 74 at 1.)  See 21 U.S.C. § 841(b)(1)(B).  For these reasons, the Court also finds that the record shows that petitioner cannot support the performance prong of his claim of ineffective assistance of counsel regarding a possible more favorable sentence under an open guilty plea in this case.

**4.      Claim Four:  Failure to seek a conditional plea agreement under Rule 11(a)(2)**

Petitioner's fourth claim reads verbatim as follows:

Counsel rendered ineffective assistance of counsel when he did not or seek to preserve in writing, pursuant to Fed.Crim.Proc.Rule 11(a)(2), my speedy trial claim when I had expressed to him my intention to appeal the issue.  I was prejudiced because I would have proceeded to trial if I had known the issue was not preserved.

(Dkt. 1 at 9.)

He makes the following factual allegations on this claim:

> Counsel was ineffective when he did not or did not seek to preserve Petitioner's speedy trial claim for appellate review, pursuant to Federal Criminal Procedure Rule 11(a)(2), which permits the entry of a conditional plea of guilty where an issue is preserved for appellate review.
>
> Petitioner had expressed to counsel that he was interested in appealing the speedy trial claim that had been denied by the Court prior to the entry of guilty plea. The situation during the plea-bargaining process was conducive for Counsel to seek a conditional guilty plea since by all indications, the Government had appeared to prefer resolving the case through a plea-bargain rather than a trial. Indeed, the Court appeared to have expressed its approval for such a plea.... If anything at all, the Court certainly alerted Counsel to the issue of preserving the claim. But Counsel failed to follow the cue given by the Court. Had Counsel attempted to do so and not gotten the Government's consent, Petitioner would not have pleaded guilty and would have proceeded to trial.

(Dkt. 1-2 at 15-16 (citations omitted).)

The relief that petitioner seeks on this claim is an order vacating his conviction.

(Id. at 22.)

This claim refers to the fact that prior to entering his guilty plea on March 11, 2002, petitioner had moved, shortly before the date of trial, to dismiss the indictment for alleged violations of his rights under the Speedy Trial Act, 18 U.S.C. § 3161 and due process. (Crim. dkt. 67.) This Court heard oral argument and denied that motion in an oral ruling on March 5, 2002, before commencing jury selection as scheduled on that date. (Crim. dkt. 109 at 11-21.) The order formalizing that ruling was placed on the docket on March 11, 2002, which was the date when trial was set to proceed and when petitioner instead pled guilty. (Crim. dkt. 70 at 1-3; crim. dkt. 71; crim. dkt. 109 at 112-

58

18.  See also crim. dkt. 137; crim. dkt. 147 at 1-2 and attachments A & B; crim. dkt. 157; crim. dkt. 160 at 10-14 (proceedings on petitioner's later reconsideration motion under Speedy Trial Act).)

The written plea agreement, which was placed on the record during the plea hearing that day, contained no express waiver of appellate rights.  (Crim. dkt. 74.)  On the subject of appeal, it stated only as follows:

> The United States specifically reserves the right to correct factual misstatements relating to sentencing proceedings; to appeal Osman Garba's sentence pursuant to 18 U.S.C. § 3742(b); and to oppose any appeal of his sentence by Osman Garba pursuant to 18 U.S.C. § 3742(a).

(Id. at 3.)

There was direct discussion of petitioner's Speedy Trial Act issue during his guilty plea hearing.  That exchange was as follows:

> THE COURT:  Now, the other features of the plea agreement are simply, Mr. Garba, that you are retaining your right to appeal the sentence in this case.
>
> MR. GARBA:  Yes, Your Honor.
>
> THE COURT:  And I understand that the Government is also agreeing that if you have any right to appeal concerning the Speedy Trial Act motion that you made, that you can pursue that appeal as well.
>
> MR. GARBA:  Yes, Your Honor.
>
> THE COURT:  Is that right, Mr. [Prosecutor]?
>
> [THE PROSECUTOR]:  Yes, Judge.  There's nothing in the plea agreement where he waives any of his rights that he doesn't normally waive by entering a plea of guilty.  So there's no -- there's no provision in the plea agreement.  It's not part of the plea agreement.

59

THE COURT:  Okay.  Now, whether the Appeals Court agrees that you have a right to appeal something that happened at that stage in the case, that's something you'll have to take up to the Appeal Court.  Understand?

MR. GARBA:  Yes, Your Honor.

THE COURT:  Okay.  And then finally, you do reserve the right to take a position as to what your sentence should be at the time of sentencing and you do reserve the right to appeal any sentence that you get.

MR. GARBA:  Yes, Your Honor.

THE COURT:  Okay.  Except that you've agreed that these stipulations will not be disputed between yourselves, either at the time of sentencing or later. Understand?

MR. GARBA:  Yes, Your Honor.

THE COURT:  Is that your understanding also, Mr. Rhoads?

MR. RHOADS:  That's correct, Your Honor.  May I just have one moment on the issue of appeal?

THE COURT:  Sure.

MR. RHOADS:  All right.  I just wanted to be clear that he understands the appellate process.  If we do, if we go to the Third Circuit, it may well be the Third Circuit may say it's not cognizable on appeal.  I wanted him to be aware of that before we go any further.  And he's aware of that.

THE COURT:  Okay, fine.

(Crim. dkt. 71 at 13-14.)

It will be recalled that petitioner did appeal from his original judgment of

conviction, and that appeal was pending in 2005 when Booker was decided, requiring

remand for resentencing only.  Petitioner had raised his Speedy Trial Act issue in that

60

original appeal, and the Court of Appeals ruled as follows in its opinion filed on April 13, 2005:

> Having upheld the District Court's denial of Garba's motion to withdraw his guilty plea, we can easily dispense with his Speedy Trial Act argument.  His unconditional guilty plea (without reservation of the right to challenge the denial of his motion under the Act) operated as a waiver of all claims of pre-existing error (except those going to the Court's jurisdiction).  As such, Garba has waived the right to invoke on appeal the denial of his Speedy Trial Act motion.

Garba, 128 Fed.Appx. at 857.

That ruling came in a non-precedential opinion, without citation to any case law authority in the Third Circuit or outside this Circuit.  Id.  It was not until almost five years after petitioner's guilty plea in this case, that our Court of Appeals issued an official ruling that "the right to a speedy trial is non-jurisdictional, and is therefore waived by an unconditional and voluntary guilty plea."  Washington v. Sobina, 475 F.3d 162, 166 (3d Cir. 2007).

Petitioner did file another direct appeal after his post-Booker resentencing.  In that appeal he reframed his speedy trial issue as a challenge to the knowing and voluntary nature of his guilty plea.  The Court of Appeals rejected that argument in its opinion filed on January 22, 2009, ruling as follows:

> Garba contends that he did not waive his right to appeal the denial of his Speedy Trial Act motion in light of Zedner v. United States, 547 U.S. 489 (2006) or, alternatively, that his guilty plea was not knowing and voluntary because at the time he thought he would be able to appeal.  Zedner  is not relevant, however, because there the Supreme Court held that "a defendant may not prospectively waive the application of the [Speedy Trial] Act."  Id.

61

at 503 (emphasis added).  There was no prospective waiver in this case. Indeed, Garba unsuccessfully moved to dismiss the indictment based on the Speedy Trial Act.

Furthermore, Garba cannot attack his guilty plea due to his erroneous impression that he could appeal the denial of his Speedy Trial Act claim. During the plea colloquy, the government conceded that there was "nothing in the plea agreement where he waives any of his rights that he doesn't normally waive by entering a plea of guilty."  The District Court emphasized, and Garba understood, that the propriety of the appeal was up to the Third Circuit.  In fact, Rhoads spoke with Garba regarding the appeals and told the District Court "it may well be that the 3rd Circuit may say it's not cognizable on appeal.  I wanted [Garba] to be aware of that before we go any further.  And he's aware of that."

Moreover, the District Court did not fail to inform Garba of his waiver of appellate rights.  At the time of the guilty plea -- March 11, 2002 -- we had not yet officially held that an unconditional guilty plea constituted a waiver of Speedy Trial Act rights.  We so held in Washington v. Sobina, 475 F.3d 162, 164 (3d Cir. 2007), nearly five years later.  Given the state of the law, the District Court accurately informed Garba that we would have had to decide whether a Speedy Trial Act claim could be heard on appeal despite a plea of guilty.  That we ultimately decided contrary to Garba's position is of no moment.

Garba, 307 Fed.Appx. at 701.

Petitioner also attempted to assert an ineffective assistance of counsel claim in that

resentencing appeal, which the Court of Appeals deferred for Section 2255 review,

commenting as follows:

Garba's ineffective assistance of counsel claim is also frivolous.

It has long been the practice of this court to defer the issue of ineffectiveness of trial counsel to a collateral attack. Nonetheless, we have held that we may address the claim of ineffective assistance of counsel on direct appeal when the record is sufficient to allow the determination of the issue.

> United States v. Thornton, 327 F.3d 268, 271 (3d Cir. 2003) (internal
> citation omitted).  Garba argues that the exception applies here.  We do not
> agree.
>
> The record is not sufficient for us to evaluate Rhoads's strategy and
> advice regarding Garba's plea and his Speedy Trial Act claim.  The District
> Court's opinion only addressed Rhoads's effectiveness as it related to the
> drug amount stipulation in the plea agreement.  We lack a record of
> Rhoads's reasoning for his actions and do not have Rhoads's own account
> of his advice to Garba.  Thus, to engage in an ineffective assistance of
> counsel analysis now would be entirely speculative.  Garba's claim is more
> appropriately raised in a collateral action pursuant to 28 U.S.C. § 2255.

Id. at 702.

This, of course, is petitioner's Section 2255 motion, when according to the above-

quoted directive of the appeals court, his claim of ineffective assistance of trial counsel in

connection with the appealability of his Speedy Trial Act claim should be addressed by

this Court.  As we have noted, Mr. Rhoads passed away in 2008.  See n.5 supra.  Thus, no

evidentiary hearing that we could convene in this Section 2255 proceeding can make a

further record of his reasoning for his actions and his own account of his advice to

petitioner, beyond the extensive case records that now exist.  But that does not prevent

this Court from drawing sensible conclusions from the record that we do have.

We first note that petitioner's Speedy Trial Act claim has been reframed, for

purposes of his Section 2255 motion, to assert for the first time that it was the lack of a

"conditional" plea agreement under Rule 11(a)(2), or at least the lack of an effort by Mr.

Rhoads to obtain such an agreement, that constitutes ineffective assistance of counsel.

(Dkt. 1 at 9.)  He now asserts that the prejudice in this situation is that if counsel had

made such an effort, and if the government had refused to consent, he would not have pled guilty and would have insisted on going to trial.  (Dkt. 1-2 at 15-16.)

This Court finds that petitioner cannot prevail on the performance prong of this claim, based on the available records of his criminal case here.  The fact is that he did know, and was told in no uncertain terms by both his counsel and this Court at the guilty plea hearing, that although the plea agreement was silent as to any right to appeal the denial of his Speedy Trial Act motion, he could ask the Court of Appeals to allow such an appeal, and whether or not such an appeal would be allowed would be an issue for that court to decide.  The prosecutor agreed with that advice to petitioner, on the record on that date.  (Crim. dkt. 71 at 13-14.)  Petitioner's trial counsel, Mr. Rhoads, even questioned him directly during that colloquy, to reinforce the fact that counsel had provided petitioner with that information, for him to evaluate in deciding whether to accept the plea agreement.  (Id.)

Neither the prosecutor nor Mr. Rhoads made any mention, during that colloquy, of the potential of petitioner entering into a conditional plea.  The rule that would apply to such a plea provides as follows:

> Conditional Plea.  With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion.  A defendant who prevails on appeal may then withdraw the plea.

Fed. R. Crim. P. 11(a)(2).

The comments of both counsel -- prosecutor and Mr. Rhoads -- during that colloquy, did indicate clearly that they were aware of the unsettled state of the law, in this Circuit at that time, on the issue of whether his Speedy Trial Act claim could be appealed after he pled guilty under the plea agreement that he had signed. Both Mr. Rhoads (a long-time member of our CJA panel for criminal defense assignment) and the prosecutor were seasoned criminal trial attorneys, well aware of the Federal Rules of Criminal Procedure and current Third Circuit precedent. They would thus have been aware that the issue would be moot if a <u>conditional</u> plea had been entered into, which would require consent of the government and the Court. Yet no <u>conditional</u> plea was discussed on the record, and in our view that was for good reason: the government would not have agreed, even if asked to make such an offer. This Court can reasonably draw that inference based upon two facts: First, in the memory of this judicial officer, we have not seen a conditional plea agreement entered into by the United States Attorney for the District of New Jersey in 22 years of service as a District Judge. Second, the reason the extremely thorough plea withdrawal hearing that we later conducted did not touch upon that subject was that it was not raised in the plea withdrawal motion, which was prepared and litigated by one of the most distinguished members of the trial and appellate bar in this federal District, the late John J. Barry. We specially appointed Mr. Barry, and he graciously accepted the onerous task of preparing and litigating the plea withdrawal motion as a service to the client and the Court. (Crim. dkt. 110.) If Mr. Barry had been aware of any

practice of the United States Attorney for this District that would give any hope of a conditional plea agreement for the Speedy Trial Act issue in petitioner's case, he surely would have raised it as a ground of alleged ineffective assistance of counsel during that phase of the case. The fact that he did not, when he was fully aware of petitioner's desire to appeal the denial of his Speedy Trial Act motion, supports our conclusion on this issue.

We hold that based upon this record, at the time of petitioner's guilty plea and the services of trial counsel that led up to that plea, and in the exercise of professional judgment of competent criminal defense counsel in the District of New Jersey at the time, it would not be ineffective assistance of trial counsel to have failed to seek a conditional plea agreement in this case, because counsel likely would have known that such an effort would have been fruitless. We therefore conclude that petitioner cannot establish the performance prong of his <u>Strickland</u> claim on this issue. <u>Strickland</u>, 466 U.S. at 687.

### 5. Claim Five: Failure to advise petitioner not to plead guilty to conspiracy

Petitioner alleges his fifth (supplemental) claim as follows:

> Petitioner ... moves ... to vacate his conviction for conspiracy under 21 USC § 846, to violate 21 USC § 841(a)(1), because the Government failed to establish that there was an underlying agreement between Petitioner and others to work together to achieve a common goal, thus the plea was unknowing and involuntary and Counsel was ineffective for advising Petitioner to plead guilty when Petitioner had contended there was no conspiracy and had insisted on going to trial, but for Counsel's erroneous advice.

(Dkt. 5 at 1.)

He makes the following factual arguments on this claim:

First, from the outset Petitioner had contested the existence of a conspiracy between himself and others.  In fact, Petitioner had repeatedly asked Counsel, albeit without success, to file a Severance Motion in order not [to] be prejudiced by being lumped in a single trial with the alleged co-conspirators.  Second, the record is replete with evidence that Petitioner had insisted on going to trial which evidently resulted in his move to withdraw the guilty plea.  Furthermore, during the plea colloquy, Petitioner was clearly reluctant to plead guilty to the conspiracy charge which he believed was not supported by the facts, but for Counsel's erroneous advice.  And when the Court asked the Government to put in the record statements and Petitioner's answers to questions which would form the factual basis for the plea, the Government's opening statement was this: . . . Mr. Garba, between . . . . in or about 1994 through in or about 1997, were you involved in the smuggling of cocaine to Europe through the use of couriers?

[The government's] opening statement and the subsequent questions and answers did not establish the existence of an agreement between Petitioner and others to cooperate in order to achieve a common goal.  The Government's questions did not even include questions as to whether Petitioner had agreed to cooperate with others to achieve a common goal.  This was the essence of the conspiracy charge and the Government failed to establish that.  What the Government presented was that Petitioner had distributed a controlled substance by way of exportation to Europe....

Furthermore, during any of the meetings Petitioner had with the Government in its effort to convince him to plead guilty, the evidence presented did not show or establish this critical element....

Because of the exportation element of the whole evidentiary presentation, the factual basis rather constituted a different offense under 21 USC § 953 [exportation of narcotics]....  Even though the Government had the prerogative to prosecute Petitioner under [the exportation] statute, it chose not to....  The Government unequivocally opted to prosecute Petitioner for conspiracy under 21 USC § 846, whose critical element it failed to establish....

Because Petitioner had insisted on going to trial as evidenced by the move to withdraw the guilty plea, there is no doubt that he would have gone

on to trial if counsel had advised him correctly....  As the foregoing paragraphs attest, the evidence the government presented would have been insufficient to convict Petitioner of conspiracy as a matter of law....

In a nutshell, the evidence here simply did not establish that Petitioner ever agreed to work with anyone to achieve a common goal.  And because the Government failed to demonstrate such an agreement, this conspiracy conviction cannot stand as a matter of law.

(Id. at 3-6 (emphasis in original).)

We understand this argument to attempt to raise two issues:  (1) the facts established by petitioner's sworn testimony at the Rule 11 plea hearing were not sufficient to sustain his conviction under 21 U.S.C. § 846; and (2) the government's available evidence was insufficient to have established petitioner's guilt on that conspiracy charge if he had gone to trial.  Based on those premises, petitioner claims that he received ineffective assistance of counsel in the advice that led to his guilty plea in this Court, and if he had received adequate advice regarding his chances of prevailing at trial, he would have insisted on going to trial rather than pleading guilty.[21]

---

[21]  Petitioner's reliance upon Estelle v. McGuire, 502 U.S. 62 (1991), is misplaced.  He erroneously cites that decision for the proposition that "[e]ven a guilty plea agreement does not relieve the government of [its] burden of proof because it is not the defendant's to waive."  (Dkt. 5 at 2, misciting and misquoting Estelle, 502 U.S. at 72 n.4.)  Estelle was a habeas petition from a jury trial, not from a guilty plea.  Ruling on an evidentiary issue arising during the trial, the Court stated, "the prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense.  In the federal courts, '[a] simple plea of not guilty ... puts the prosecution to its proof as to all elements of the crime charged.' ....  Nether the Court of Appeals nor the parties have given us any reason to think that the rule is different in California."  Estelle, 502 U.S. at 69-70 (internal citation omitted).  That statement of the law has no application to the guilty plea context, such as in this case.

This is, in effect, a claim of actual innocence of the charge to which petitioner pled guilty, as well as another allegation of ineffective assistance of counsel.  In effect, petitioner claims that no reasonable lawyer would have advised him to plead guilty to the count one conspiracy charge under 21 U.S.C. § 846, because his conduct did not fit the elements of that crime.  However, these points must be categorically rejected, based upon the files and records of the underlying criminal proceedings in this case.

The adequacy and completeness of the Rule 11 plea hearing conducted by this Court on March 11, 2002 have been amply established in the record.  First, this Court itself ruled that there was no error in that hearing, in our published opinion denying petitioner's motion to withdraw his guilty plea.  Garba, 285 F.Supp.2d at 507-15.  In that motion, petitioner did not contend that he was not involved in the charged conspiracy, but only that his involvement was in an amount less than 15 kilograms.  Nevertheless, our opinion at that time thoroughly summarized and analyzed the adequacy of the Rule 11 hearing, including the following:

> The Court next asked the government to question Garba on the record in order to establish a factual basis for the plea.  During the questioning, Garba conceded multiple times that the drug involved was cocaine, and that his "involvement with his conspiracy involve[d] the exportation of more than five kilograms of cocaine."  The Court accepted Garba's plea.
> ....
> Garba [later] moved to withdraw his guilty plea....  On the first hearing date, Garba testified that he thought he could still argue the cocaine amount because Rhoads had assured him the stipulation would not preclude such a claim.  He further testified that he had been part of a conspiracy involving at least 5 kilograms of cocaine, but that the amount had been

69

> under 15 kilograms.... On the second hearing date, ..... Rhoads further
> testified that Garba had admitted to him previously that the conspiracy
> involved more than 15 kilograms of cocaine.

Id. at 508 (record citations omitted). There we concluded:

> Garba moves to withdraw a plea of guilty made voluntarily before
> the Court, with full knowledge of what it meant to waive his right to a trial.
> Garba has not asserted his innocence of the crime to which he admitted
> guilt in open court. Nor has he forwarded any strong reasons to support his
> motion. While criminal defendants should be permitted to withdraw their
> pleas before sentencing in some cases, this action is not one of them.
> Therefore, the Court will deny the motion.

Id. at 515.

> The Court of Appeals, as we have seen, affirmed that decision of this Court, stating:

> "[T]here is no absolute right to withdraw a guilty plea," but rather
> "acceptance of the motion is within the discretion of the trial court." Gov't
> of V.I. v. Berry, 631 F.2d 214, 219 (3d Cir. 1980). We are satisfied that the
> District Court properly exercised this discretion in a manner consistent with
> our Circuit's precedent. Its denial of Garba's motion to withdraw his plea
> was thorough, careful and well-reasoned. We therefore accept its
> conclusion.

Garba, 128 Fed.Appx. at 856.

There was no defect in the Rule 11 hearing, including the factual basis for the

conspiracy charge to which petitioner testified under oath at that hearing. If there had

been, that defect would have been discovered and adjudicated during the motion to

withdraw the guilty plea, and during one or both of the two direct appeals after sentencing

and resentencing. See id. (first appeal decision); Garba, 307 Fed.Appx. at 699-702

(second appeal decision). No such error existed, or was found to exist.

70

The government's evidence of petitioner's participation in a conspiracy, as distinguished from a mere buyer/seller offense, was explicitly addressed during the three-day evidentiary hearing that was part of his sentencing process.  (Crim. dkt. 115, 116, 117.)  After hearing petitioner's testimony, this Court initiated the following exchange with the prosecutor during oral argument on the role in the offense enhancement:

THE COURT:  Could I just stop you there for a moment, please?

[PROSECUTOR]:  Sure.

THE COURT:  In your view, in the government's view, if Mr. Garba's role in these activities was to go to New York and buy cocaine for an identified buyer and to sell it to the buyer, knowing that the buyer was going to go do with it something, move it on down the distribution chain somewhere, maybe Europe, and did this repeatedly with the same essential method and the same essential contacts both on the buying end and the selling end, he's in the conspiracy even though by his own description he is "only a middle man," correct?

[PROSECUTOR]:  Correct.  The only thing that I would say, there is case law that says if it's strictly a buyer/seller relationship and that he ... buys cocaine or a seller of cocaine in this case, selling it to the couriers, if it's a strict simple buyer/seller relationship without more, then that may not make him part of some overall conspiracy.  If it's just a simple buyer/seller.  If he does it with different people, but it's simply buyer/seller ... --

THE COURT:   So in your view, what gets Mr. Garba's own version of his activities here into the conspiracy conviction as opposed to possession with intent to distribute?

[PROSECUTOR]:  By his own testimony?

THE COURT:  That's right.  The meeting of the minds that creates this plea.  Here [at sentencing] we're only talking about the extent of his role.  But let's go back to the exact meeting of the minds that creates this plea.  Let's go back to the plea colloquy.  Mr. Garba pled guilty to count one of the superseding indictment....

71

And in the plea colloquy the questions begin at page 25. Do you have a copy of that there?

[PROSECUTOR]: Yes, Your Honor. It goes on for a number of pages.

THE COURT: Yes, it does. Well, on the very first page it says -- between 1994 and 1997, were you involved in the smuggling of cocaine to Europe through the use of couriers? Answer, yes. Question, were you aware that cocaine was being packaged inside bed sheets or luggage, shirts, toothpaste containers, in order to smuggle the cocaine to Europe? Answer, yes. Third question. Did members of the conspiracy recruit couriers to carry the bed sheets and other items containing cocaine to places outside of the United States including London, England? Answer, yes. Okay? So that in and of itself crystallizes the conspiracy and his culpability.

[PROSECUTOR]: Correct.

THE COURT: Right?

[PROSECUTOR]: Right.
....
[PROSECUTOR]: The point I was making was, I believe Mr. Garba's own testimony and factual basis, and his testimony today in particular, is sufficient. He calls himself a middle man, at times a facilitator and any number of other things to try to put some spin on what he did. I think what he did -- even if we believe his testimony -- is sufficient for a role adjustment in this case. But I think his role was much greater than he's letting on, and I think this transcript shows us that, especially when he's talking about what's done with the cocaine once it gets to Europe and why he wants it pure. And he's emphasizing that [in the taped conversation in evidence] to Willie Gatling. I want it pure. I want it directly from South America. And if we were to consider what Mr. Garba said is that oh, I just give it to the courier in the hotel as I got it from Polanco without packaging or anything else and didn't know what happened to it and didn't get proceeds from the sale of it in England, he wouldn't be so concerned with the purity of the cocaine....
....
And it's that concern with the ultimate end product over in England that shows in this transcript [of recorded conversation] that he's much more involved than Mr. Garba is letting on....

(Crim. dkt. 116 at 159-65.)

Not only did the Court and the prosecutor discuss the distinction between mere buyer/seller and a conspiracy offense in that hearing, petitioner's specially appointed substitute counsel, John J. Barry, Esq., agreed that the evidence undoubtedly supported his conspiracy plea and conviction. Here is Mr. Barry, speaking during that same oral argument regarding the role in the offense issues:

> MR. BARRY:  As Your Honor pointed out at the outset, there's no doubt that Mr. Garba did participate in this conspiracy, and he has always admitted that from the very outset. His sole quarrel with the position of the United States is that he claims that he was not in a position of authority, as he has testified. He purchased quantities of narcotics and delivered them and he took a commission out of that and that was his sole participation. I realize this [role enhancement issue] is a matter solely within the discretion of the Court in ascertaining where the truth will lie, and I ask that you give my client every consideration that he is due. Thank you.

(Id. at 172.)

The findings of this Court on petitioner's role in the conspiracy, after conducting that evidentiary hearing, were detailed and specific. We made extensive findings as to both the extent of his role and the sufficiency of the evidence supporting that upward adjustment in his guidelines offense level computation. See subsection 3 supra. Necessarily, that same evidence supports his conspiracy conviction itself.

There is no support in the record of the entire underlying criminal case for petitioner's current claim that the evidence would have been insufficient to establish his guilt on the count one conspiracy charge. To the contrary, the evidence of his guilt was overwhelming. Therefore, he cannot establish his claim that he received ineffective

assistance of trial counsel when he entered his guilty plea to that charge.  See, e.g., United States v. Sparrow, 371 F.3d 851, 854 (3d Cir. 2004) ("In this context, sufficient evidence exists to support Sparrow's § 924(c) conviction.  As such, his attorney's advice to plead guilty does not constitute ineffective assistance of counsel.")

## III.    CONCLUSION

This Court finds that petitioner has not met his burden to establish his claims asserted in this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence in his underlying criminal action, Criminal No. 99-704-3 (MLC).

No certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c).  Cf. Fed.R.App.P. 22; Loc.App.R. 22.2.  A certificate of appealability is issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); United States v. Cepero, 224 F.3d 256, 267-68 (3d Cir. 2000).  For the reasons discussed above, petitioner has not made such a showing here.

The Court will issue an appropriate Order and Judgment.


   s/ Mary L. Cooper        
**MARY L. COOPER**
United States District Judge

Dated:  April 30, 2013